J. A32034/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHYE RIVAS, | : | |
| | : | |
| Appellant | : | No. 2621 EDA 2013 |

Appeal from the Judgment of Sentence April 10, 2013
In the Court of Common Pleas of Chester County
Criminal Division No(s).: CP-15-CR-0001411-2011

BEFORE: PANELLA, OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED JUNE 30, 2015**

Appellant, Khye Rivas,[1] appeals from the judgment of sentence

entered in the Chester County Court of Common Pleas following a jury trial

and convictions for two counts of possession with intent to deliver

("PWID"),[2] two counts of possession of a controlled substance,[3]  fifteen

counts of criminal solicitation,[4]  three counts of criminal use of a

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant was tried with co-defendant Jerome Grier, whose appeal is docketed at 1429 EDA 2013.

[2] 35 P.S. § 780-113(a)(30).

[3] 35 P.S. § 780-113(a)(16).

[4] 18 Pa.C.S. § 902(a).

communication facility,[5] one count of criminal conspiracy,[6] and one count of dealing in proceeds of unlawful activities.[7] Appellant contends the trial court should have granted his motion to suppress the wiretapped recordings of his telephone conversations as they exceeded the scope of the orders authorizing the wiretaps, erred by permitting the introduction of evidence of drugs and drug sales not relevant to Appellant, and improperly sentenced him. Appellant also challenges the sufficiency of the evidence for his conviction for dealing in proceeds of unlawful activities and asserts his convictions for PWID and criminal solicitation were against the weight of the evidence. We affirm Appellant's convictions, but vacate the judgment of sentence and remand for resentencing.

We glean the facts from the record, including the trial court's opinion:[8]

> The criminal charges in this case arose as a result of a lengthy multi-agency police investigation . . . . The investigation included wiretap authorization orders issued by the Superior Court and the compilation of thousands of intercepted communications regarding the purchasing, selling and transferring of drugs and money. This investigation resulted in [Appellant's] arrest as well as the

---

[5] 18 Pa.C.S. § 7512(a).

[6] 18 Pa.C.S. § 903(c).

[7] 18 Pa.C.S. § 5111(a)(1).

[8] We state the facts in the light most favorable to the Commonwealth, as Appellant challenges, *inter alia*, whether his motion to suppress should have been granted. **See generally Commonwealth v. Landis**, 89 A.3d 694, 702 (Pa. Super. 2014).

> arrest of fifteen other defendants who were involved in this drug trafficking organization.

Trial Ct. Op., 8/28/13, at 1.

With respect to Appellant, the police intercepted numerous calls to DiMatteo soliciting drugs. *See, e.g.*, N.T. Trial, 1/10/13, at 208-09; Ex. C-36.[9] Surveillance footage captured Appellant entering DiMatteo's residence on multiple occasions to obtain the drugs. *See, e.g.*, N.T. Trial, 1/10/13, at 214-15. The police testified about numerous conversations between Appellant and DiMatteo regarding various drug transactions. *See, e.g.*, *id.* at 209-10, 213-14; N.T. Trial, 1/11/13, at 46-47, 63-66, 69-71. After a seven-day jury trial and four hours of deliberation, the jury found Appellant guilty of the above crimes.

On April 10, 2013, the trial court sentenced Appellant to an aggregate total of twelve and one-quarter to twenty-four and one-half years' imprisonment. Those sentences included, *inter alia*, one mandatory minimum sentence based upon a conviction for possession with intent to deliver cocaine. Appellant timely filed a post-sentence motion challenging, *inter alia*, the weight of the evidence for his convictions for possession with intent to deliver; his motion did not challenge the weight of the evidence for his convictions for criminal solicitation. The court denied Appellant's post-

---

[9] Commonwealth's Exhibit C-36 is a three-ring binder with over three hundred pages of transcribed calls over a period of three months between DiMatteo and Appellant or co-defendant Jerome Sherwin Grier.

sentence motion and Appellant timely appealed. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following eight issues:

Did the court err in admitting wiretap evidence that was illegally obtained?

Did the court err in denying [Appellant's] motion for mistrial after co-defendant Omar Shelton pled guilty during the trial?

Did the court err in permitting Trooper Justin Hope to testify about a traffic stop of Christopher Curry and permitting Trooper Hope to show cocaine to the jury that was possessed by Mr. Curry [Trial Exhibit C-17]?

Under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article I, § 9 of the Pennsylvania Constitution, was evidence insufficient to sustain Appellant's conviction for dealing in proceeds of unlawful activities, 18 Pa.C.S.A. [§] 5111?

Under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article I, § 9 of the Pennsylvania Constitution, was Appellant's conviction for possession with intent to deliver a controlled substance against the weight of the evidence?

Under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article I, § 9 of the Pennsylvania Constitution, was Appellant's conviction for criminal solicitation against the weight of the evidence?

Should [Appellant's] mandatory sentence for PWID [April 14, 2010], pursuant to 18 Pa.C.S. § 7508, be vacated because facts that increased his sentence, in this case, the weight of the cocaine, are an element that should have been submitted to the jury and found beyond a reasonable doubt?

Is [Appellant] an 'eligible offender' under the provisions of the Recidivism Risk Reduction Incentive [RRRI]?

Appellant's Brief at 10-11 (reordered to facilitate disposition).

In support of his first issue, Appellant argues that in support of the wiretap application, the Commonwealth falsely averred that normal investigative techniques would not work and speculates that such techniques would have worked. *Id.* at 16-17. Accordingly, Appellant reasons the order authorizing the wiretap should be "quashed." *Id.* at 19. We hold Appellant is due no relief.

> The standards governing a review of an order denying suppression motion are well settled:
>
> > We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by the defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Landis*, 89 A.3d at 702 (citation omitted).[10] After careful review of the parties' briefs, the record, and the decision of the Honorable Phyllis R. Streitel, we affirm this issue on the basis of the trial court's reasoning. *See*

---

[10] We acknowledge the holding of *In re L.J.*, 79 A.3d 1073 (Pa. 2013), that after October 30, 2013, the scope of review for a suppression issue is limited to the record available to the suppression court. *Id.* at 1085, 1089 (stating holding applies to "all litigation commenced Commonwealth-wide after the filing of this decision"). Because the instant criminal complaint was filed prior to October 30, 2013, *In re L.J.* does not apply.

Trial Ct. Op., 10/10/12, at 7-8 (holding that Appellant's claim of false statement is misleading as affiants identified results of normal investigative techniques and explained necessity of wiretap, and thus Appellant has not made substantial preliminary showing of knowing and intentional false statement).

We quote the second paragraph of Appellant's two-paragraph argument in support of his second issue:

> [The trial court] gave a cautionary instruction to the jury in conformance with **Commonwealth v. Geho**, 302 A.2d 463 (Pa. Super. 1973). However, [Appellant] suffered incurable prejudice with the withdraw [sic] of Mr. Shelton from the case. The implication is that Mr. Shelton pled guilty, especially in light of Mr. Shelton's confession. [Appellant's] motion for mistrial should have been granted.

Appellant's Brief at 20. We disagree.

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

**Commonwealth v. Tejeda**, 834 A.2d 619, 623 (Pa. Super. 2003) (citations, footnote, and some punctuation omitted). After a thorough review of the record, the parties' appellate arguments, and the trial court's decision, we agree that Appellant has not established an abuse of discretion for his first two issues. **See** Trial Ct. Op., 12/12/13, at 3-8 (holding

Shelton's guilty plea was not in jury's presence; jury given appropriate cautionary instruction; reasonable inference that Shelton's counsel suffered injury from accident; and that Superior Court in *Geho*, *supra*, which affirmed denial of motion for mistrial after defendant's two-codefendants pleaded guilty in jury's presence and court gave cautionary instruction governs instant case).

In support of his third issue, Appellant suggests the trial court erred by admitting testimony of a traffic stop of Christopher Curry and cocaine seized as a result of that stop. *See* Appellant's Brief at 20. The seizure was not connected to Appellant and was used by the Commonwealth to establish DiMatteo "was a big drug dealer." N.T., 1/9/13, at 186. Appellant complains the evidence had no probative value and thus was outweighed by prejudice. Appellant's Brief at 22. For his fourth issue, Appellant challenges whether the evidence was insufficient for his convictions for dealing in proceeds of unlawful activities. He insists that the Commonwealth failed to adduce evidence that he had knowledge that he conducted a financial transaction involving the proceeds of an illegal drug transaction. *Id.* at 29. Appellant maintains that there was no evidence that the money he "used to purchase drugs from DiMatteo was derived from illegal activity, nor that there was concealment or money laundering on" Appellant's part. *Id.* at 30. We ascertain no basis for relief for either issue.

The standard of review for admission of evidence follows:

> The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Further, an erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error is harmless.
>
> An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless.

*Commonwealth v. Northrip*, 945 A.2d 198, 203 (Pa. Super. 2008) (citations and formatting omitted).

The standard of review for a challenge to the sufficiency of evidence is *de novo*, as it is a question of law. *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235 (Pa. 2007).

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict.

*Id.* at 1235-36 (citations and some punctuation omitted). "When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." *Id.* at 1237 (citation and some punctuation omitted).

The Pennsylvania Crimes Code defines dealing in proceeds of unlawful activities as follows:

> **(a) Offense defined.—**A person commits a felony of the first degree if the person conducts a financial transaction under any of the following circumstances:
>
> (1) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity, the person acts with the intent to promote the carrying on of the unlawful activity.
>
> (2) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity and that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful activity.
>
> (3) To avoid a transaction reporting requirement under State or Federal law.

18 Pa.C.S. § 5111(a)(1)-(3).

After careful review of the parties' briefs on Appellant's third issue, the record, and the trial court's decision, we affirm. **See** Trial Ct. Op., 12/12/13, at 8-14, 23 (holding court gave extensive cautionary instructions on multiple occasions with respect to admitted evidence and jury presumed to heed such instructions;[11] Commonwealth adduced sufficient evidence that Appellant used proceeds from selling drugs to purchase additional drugs);

---

[11] Even presuming the court erred by admitting the evidence at issue, we would hold such error harmless given the extensive intercepted communications inculpating Appellant. **See Northrip**, 945 A.2d at 203.

*see generally* N.T. Trial, 1/10/13, at 209-10; N.T. Trial, 1/11/13, at 46-47, 63-66, 69-71.

We summarize Appellant's arguments for his fifth and sixth issues together. He maintains that his convictions for possession with intent to deliver and criminal solicitation were against the weight of the evidence. We hold Appellant is due no relief.

A challenge to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). This Court cannot "entertain a challenge to the weight of the evidence since [our] examination is confined to the 'cold record.'" *Commonwealth v. Brown*, 648 A.2d 1177, 1191 (Pa. 1994) (citation omitted). We only review whether the trial court abused its discretion when it evaluated the challenge. *Id.* (limiting review of weight of evidence claim to whether trial court abused discretion). For these reasons, a challenge to the weight of evidence may not be raised for the first time on appeal. *See generally id.*; *see also* Pa.R.A.P. 607(a). Thus, if the issue is not raised with the trial court initially, it is waived. *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009). To the extent Appellant challenges the weight of the evidence for his criminal solicitation conviction, he has waived it because he did not raise the issue before the trial court. *See id.* After careful consideration of the facts, as set forth in the trial court's decision, we discern no abuse of discretion by the trial court when

denying his weight claim for his PWID conviction. **See Widmer**, 744 A.2d at 751-52.

For his seventh issue, Appellant challenges the legality of his sentence. Specifically, he claims that because the jury never determined the weight of the cocaine at issue, the court erred by imposing the mandatory minimum sentences. We hold Appellant is entitled to relief.

In **Commonwealth v. Dixon**, 53 A.3d 839 (Pa. Super. 2012), this Court set forth the following standard of review:

> Application of a mandatory sentencing provision implicates the legality, not the discretionary, aspects of sentencing. In reviewing the trial court's interpretation of statutory language, we are mindful of the well-settled rule that statutory interpretation implicates a question of law. Thus, our scope of review is plenary, and our standard of review is *de novo*.

**Id.** at 842 (citations and punctuation omitted).

Recently, in a series of cases, this Court has held that mandatory minimum sentences imposed under certain Subsections of 18 Pa.C.S. § 7508 were illegal. **See Commonwealth v. Mosley**, ___ A.3d ___, 2015 WL 1774216 (Pa. Super. Apr. 20, 2015) (vacating mandatory minimum sentence imposed under subsection 7508(a)(3)(ii)); **Commonwealth v. Cardwell**, 105 A.3d 748, 755 (Pa. Super. 2014) (concluding trial court erred by imposing mandatory minimum sentence under Subsection 7508(a)(4)(i)); **Commonwealth v. Fennell**, 105 A.3d 13, 20 (Pa. Super. 2014) (vacating mandatory minimum sentence imposed per Subsection 7508(a)(7)(i));

*Commonwealth v. Thompson*, 93 A.3d 478, 493 (Pa. Super. 2014) (holding mandatory minimum sentence under Subsection 7508(a)(2)(ii) was illegal). Instantly, given the *Mosley* Court vacated a mandatory minimum sentence imposed under Subsection 7508(a)(2)(iii)—the Subsection at issue in the instant case—and the *Thompson* Court opined on a Subsection structurally identical to the one used to sentence Appellant, we similarly vacate his sentence and remand for resentencing. *See Mosley*, ___ A.3d at ___, 2015 WL 1774216, at *15; *cf. Thompson*, 93 A.3d at 494.

Appellant lastly challenges the trial court's reasoning for holding he is not eligible for a RRRI sentence. He concedes he was convicted of persons not to possess firearms on April 11, 2012. But Appellant maintains that conviction post-dated the facts underlying the instant drug convictions and thus the firearms conviction did not predate his drug offenses. He therefore reasons that the trial court erred by not classifying his an eligible offender. We conclude Appellant has not demonstrated entitlement to relief.

As set forth in *Commonwealth v. Hansley*, 47 A.3d 1180 (Pa. 2012), "The issue in this appeal involves statutory construction, which is a question of law; thus, our review is plenary. In interpreting statutes, we are guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, as well as our decisional law." *Id.* at 1185 (citation omitted); *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 953 (Pa. Super. 2011) (*per curiam*), *aff'd*, 106 A.3d 656 (Pa. 2014).

The RRRI Act permits offenders who exhibit good behavior and who complete rehabilitative programs in prison to be eligible for reduced sentences. The express purpose of the chapter is:

> to create a program that ensures appropriate punishment for persons who commit crimes, encourages inmate participation in evidence-based programs that reduce the risks of future crime and ensures the openness and accountability of the criminal justice process while ensuring fairness to crime victims.

61 Pa.C.S. § 4502. The RRRI Act does not apply to all defendants, but only to certain "eligible offenders," a term that does not include those with a history of violent crime, convicted of certain sex offenses, or subject to a deadly weapon enhancement.

*Id.* at 1186 (citation omitted).

Section 4503 of the RRRI Act defines "eligible offender" in relevant part as follows:

> **"Eligible offender."** A defendant or inmate convicted of a criminal offense who will be committed to the custody of the department and who meets **all** of the following eligibility requirements:
>
> \* \* \*
>
> (2) Has not been subject to a sentence the calculation of which includes an enhancement for the use of a deadly weapon as defined under law or the sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing or the attorney for the Commonwealth has not demonstrated that the defendant has been found guilty of or was convicted of an offense involving a deadly weapon or offense under 18 Pa.C.S. Ch. 61 (relating to firearms and other dangerous articles) or the equivalent offense under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation.

61 Pa.C.S. § 4503 (emphasis added). Section 4505 of the RRRI Act states, "At the time of sentencing, the court shall make a determination whether the defendant is an eligible offender." 61 Pa.C.S. § 4505.

Instantly, Appellant and the Commonwealth agree he was convicted of a charge under Chapter 61 of the Crimes Code. N.T. Sentencing Hr'g, 4/9 & 10/13, at 75.[12] Thus, at the time of sentencing, 61 Pa.C.S. § 4505, Appellant is not RRRI eligible. *See* 61 Pa.C.S. § 4503. For these reasons, we affirm Appellant's convictions, vacate the judgment of sentence, and remand for resentencing in light of *Mosley*, *supra*.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judge Panella joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2015

---

[12] At the hearing, Appellant's counsel stated a belief that Appellant was "made eligible for RRRI on that sentence." N.T. Sentencing Hr'g, 4/9 & 10/13, at 75.

- 14 -

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs

: CRIMINAL ACTION

KHYE RIVAS                              : NO. 1411-11

: SUPERIOR CT. NO. 2621 EDA 2013

Nicolas Casenta, Esquire, Attorney for the Commonwealth.
Brenda Jones, Esquire, Attorney for Defendant.

STATEMENT OF THE COURT

Defendant filed a timely appeal on May 15, 2013, following sentencing on

September 16, 2013. An appeal having been taken, pursuant to Pa.R.A.P. 1925(a), the

following statement is submitted.

The criminal charges in this case arose as a result of a lengthy multi-agency police

investigation of the Chester County High Intensity Drug Trafficking Area Group. The

investigation included Wiretap Authorization Orders issued by the Superior Court and the

compilation of thousands of intercepted communications regarding the purchasing, selling

and transferring of drugs and money. This investigation resulted in Defendant's arrest as

well as the arrest of fifteen other individuals who were involved in this drug trafficking

organization.

Pursuant to the Amended Information, filed September 25, 2012, Defendant was

charged with 23 counts of criminal solicitation, in violation of 18 Pa.C.S.A. § 902;

2 counts of possession with intent to deliver, in violation of 35 Pa.C.S.A. § 780-

113(A)(30); 1 count of dealing in proceeds of unlawful activities, in violation of 18

Pa.C.S.A. § 5111(a)(1); 1 count of corrupt organizations, in violation of 18 Pa.C.S.A. §

911(b)(3); 3 counts of criminal use of a communications facility, in violation of 18 Pa.C.S.A. § 7512(a); 2 counts of possession of a controlled substance, in violation of 35 Pa.C.S.A. § 780-113(A)(16); and 1 count of criminal conspiracy, in violation of 18 Pa.C.S.A. § 903(c).

In response to Defendant's Motion to Quash Return of Transcript and/or Petition for Writ of Habeas Corpus, an Order was entered on September 21, 2012, dismissing six counts of criminal solicitation. A jury trial was conducted from January 7, 2013 through January 15, 2013. Defendant was found guilty of the following charges on January 15, 2013: 2 counts of possession with intent to deliver; 2 counts of possession of a controlled substance; 15 counts of criminal solicitation; 3 counts of criminal use of a communications facility; 1 count of criminal conspiracy; and 1 count of dealing in proceeds of unlawful activities. Defendant was found not guilty of one count of criminal solicitation. Defendant was sentenced on April 10, 2013 to an aggregate term of imprisonment of 12.25 to 24.5 years.

Defendant filed a Motion for Post Sentence Relief on April 22, 2013. On that same date, the court entered an order setting forth a briefing schedule. The Commonwealth's Memorandum of Law was filed on June 4, 2013. Defendant's Brief in Support of Post-Trial Motion was filed on June 5, 2013. An Order was entered August 19, 2013 denying Defendant's Post Sentence Motion.

Defendant filed a Notice of Appeal on September 16, 2013. On October 1, 2013, this court entered an order directing Defendant's counsel to file a concise statement of errors complained of on appeal no later than twenty-one (21) days after the entry of the order. Defendant filed his concise statement on October 22, 2013.

2

Defendant alleges eight errors complained of on appeal. This court will address each issue separately.

## Superior Court 's Wiretap Authorizing Orders:

Defendant's first issue raised on appeal is that "[w]iretap evidence was illegally obtained 1) because it was not supported by probable cause as to Mr. Rivas, 2) because the Commonwealth failed to show that alternative investigative means had tried and failed, or would be unsuccessful if tried, and 3) was based on false statements made by the Commonwealth and it's agents with the Application."

These issues were the subject of a Motion to Suppress that was filed on March 19, 2012. After a hearing and a review of the evidence and current state of the law, this court filed an Opinion and Order on October 10, 2012. In accordance with Pa.R.A.P. 1925(a), this court sets forth that the reasons for the denial of Defendant's request for suppression based on this issue on appeal are found in that Opinion and Order, which are attached hereto and made a part hereof.

## Mistrial:

Defendant's second issue raised on appeal is that the "Court erred in denying defendant's motion for mistrial after co-defendant Omar Shelton pled guilty during the trial." We disagree.

When a motion for a mistrial is presented to the court, the decision on said motion is within the sound discretion of the trial court. Commonwealth v. Greer, 895 A.2d 553, 556 (Pa.Super. 2006), quoting Commonwealth v. Tejeda, 834 A.2d 619, 623 (Pa.Super. 2003). A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive a defendant of a fair and

3

impartial trial. Id. "It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial." Id. On appeal, the standard of review is whether the trial court abused that discretion when deciding whether to deny the mistrial. Id. "An abuse of discretion is more than an error in judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." Id.

This trial started with three co-defendants: Omar Shelton, Jerome Grier and Defendant. A jury was selected on January 7, 2013. On January 8, 2013, trial proceedings were delayed because the attorney for Defendant was in an automobile accident. The jury was informed that someone involved in the case had been in an accident and that proceedings would be delayed. The jury was not informed of the identity of the person in the accident. (N.T., 1/8/13, pgs. 4-5 and 51).

Proceedings started with the jury at 12:05. (N.T., 1/8/13, p. 50). The Commonwealth presented an opening statement. (N.T., 1/8/13, pgs. 52-86). Thereafter, the jury was released for a lunch recess at 12:56. (N.T., 1/8/13, p. 87). Upon resumption of the proceedings, but not in the presence of the jury, Omar Shelton's attorney informed the court that his client and the Commonwealth reached a negotiated guilty plea, subject to the court's approval. (N.T., 1/8/13, pgs. 89 and 93).

The court and counsel discussed the best way to proceed since the jury had already been in service for two days and the trial had just reached the stage of defense opening arguments. Therefore, it was agreed that the trial would not be further delayed by taking the guilty plea at that point. The plea would be taken after the conclusion of

4

the jury proceedings that day, after the jury was released. So as to prevent any confusion or taint of the jury with an opening by Omar Shelton's attorney, he agreed to state that he would defer his opening statement. (N.T., 1/8/13, pgs 89-97).

The jury was reassembled and counsel for Defendant and Jerome Grier proceeded with their opening arguments. (N.T., 1/8/13, pgs. 97-105). Thereafter, the court asked Mr. Shelton's attorney, "Mr. Clark, do you wish to proceed now, or do you wish to reserve your time?" (N.T., 1/8/13, p. 105). He responded, "Judge, I am going to reserve my time. Thank you." Id. The Commonwealth called its first witness and questioned him until about 4:30. The witness was excused to be recalled on direct the following day. (N.T., 1/8/13, p. 167). The jury was excused at 4:36 p.m. (N.T., 1/8/13, p. 169). Thereafter, Omar Shelton entered a negotiated guilty plea.

The following morning, defense counsel presented an oral motion for mistrial. The following exchange took place with counsel and the court:

> We're now starting Day 3 of our trial. And counsel indicated to me in the last minutes of last evening that there would be a motion forthcoming.
> Counsel.
> MS. JONES: Yes, your Honor.
> MR. TAYLOR: For Mr. Grier, motion for mistrial, your Honor.
> A significant amount of information that was introduced regarding Omar Shelton is now not going to be moved. It is not relevant to this case. And now the jury has heard the information through Mr. Kelly's opening.
> They have been tainted by that information. And we don't believe that Mr. Grier can get a fair trial moving forward because that information has now been heard by the jury.
> MS. JONES: Your Honor, on behalf of Mr. Rivas, we also would move for mistrial, judge, for the same reasons that counsel stated.
> Your Honor, I think that it is practical to assume as a juror after that information where Mr. Kelly very, specifically, laid out the allegations against the other defendant, that he would leave all of

5

the sudden, just disappear, just seems to me that would be obvious that he pled guilty, judge.

So I think it's more than him being missing. I think the implication is that he has pled guilty.

MR. KELLY: Your Honor, much like the evidence of Mr. DiMatteo's dealings with Kurtis St. John and Chris Curry and Michael Pagan, and that evidence is coming in to show that Phil DiMatteo was in the business of selling drugs. So is the evidence that I spoke about concerning Omar Shelton.

We would ask that I still be able to introduce that evidence concerning the May 11th stop of Omar Shelton when he was found in possession of 184 grams. It's the same type of evidence where the Court's permitting us to use in that section on Phil DiMatteo. I am showing he is a drug user.

THE COURT: Now, I already gave you limits as to what you could put in.

MR. KELLY: You did.

THE COURT: It's cumulative. It's time consuming. And it's not directly on point. It's to give some background.

So because Mr. Shelton is not in this case any longer, and to avoid any problem as alluded to by counsel, no, we're not going to go into anything about Mr. Shelton on the 11th now. That's not going to be part of this trial.

MR. KELLY: Sure.

THE COURT: That could tend to confuse the jury.

MR. KELLY: Okay.

THE COURT: That request is denied.

MR. KELLY: I understand your ruling.

At the same time, there is no prejudice to the defense that would warrant a mistrial because the Court could permit us to introduce that evidence. I understand why you are not. I respect the decision.

My point is, though, that my opening remarks have Shelton's involvement and 184 grams on May 11th is not prejudicial. The Court can address it through a limiting instruction. It simply does not warrant the mistrial.

As to the inference that a jury could draw from Mr. Shelton's absence, I submit an inference can just as equally be drawn that the Court dismissed the charges against Mr. Shelton.

So I expressed a concern yesterday about the wording of the Court's instruction to the jury on this matter, that wording be used so as to not –

THE COURT: To go both ways.

MR. KELLY: Yes.

6

So the court, I understand, will offer an instruction that instructs the jury to make no inference, and I believe that would be sufficient.

THE COURT: Okay. Thank you.

Based upon my review of the situation, the requests for mistrial are denied. I do plan to give a cautionary instruction.

(N.T., 1/9/13, pgs. 6-10).

Once the jury entered the courtroom, the court gave the following thorough cautionary instruction to them:

Good morning. Have a seat. I hope everybody had a good evening.

Ladies and gentlemen, due to unforeseen circumstances, Mr. Omar Shelton will no longer be a part of this case. You are all cautioned that you are not to draw any inferences, negative or positive, against either side, the Commonwealth, or the defendants, nor against either defendant by this change in circumstances.

Also, regarding any information, specifically, referencing Mr. Shelton in the Commonwealth's opening address, any statements such as that should be disregarded and must be disregarded by you as we go forward in this case. They are not to be applied to Mr. Grier or Mr. Rivas in any way.

And as I said to you when we all first met when we were selecting the jury and getting you seated, members of the jury must consider each defendant and charges lodged against him separately.

As I said before, if you find a defendant guilty of committing a crime or the crimes charged, it must be because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that that defendant committed each and every element of the crime charged, and not because of any other reason.

So that's a cautionary instruction. And we're now ready to proceed.

In Commonwealth v. Geho, three co-defendants were being tried together. 302 A.2d 463, 464 (Pa.Super. 1973). "During the course of the trial, two of the defendants changed their pleas to 'guilty' in the presence of the jury. The jury was sequestered and the two codefendants were, thereafter, dropped from the proceedings. The trial

7

proceeded against Girard Geho.... When the jury returned, the trial judge gave cautionary instructions to the jury...." Id. The Geho court determined that the trial judge adequately instructed the jury that it had the burden of finding the defendant guilty beyond a reasonable doubt and that it could not take the codefendants' guilty pleas into consideration. Id. at 466.

In the case at hand, the jury was not informed that Mr. Shelton had entered a guilty plea. The plea was not announced in the presence of the jury and the jury did not know that a guilty plea was entered. Based upon the previous delay, the jury could have easily concluded that Mr. Shelton's removal from the case was related to the car accident the previous day. As set forth above, many precautionary measures were taken to ensure that the trial continued to flow and the court gave the jury the proper cautionary instruction. Certainly, even if there was a minute suggestion of an inference of guilt present based on the absence of Mr. Shelton, the instruction to the jury erased any inference and prevented any prejudice. Therefore, it was proper for this court to deny Defendant's request for a mistrial.

**Admission of Evidence:**

Defendant's third issue raised on appeal is that the "Court erred in permitting Trooper Justin Hope to testify about a traffic stop of Christopher Curry and permitting Trooper Hope to show cocaine to the jury that was possessed by Mr. Curry [Exhibit C-17]."

It is well settled in Pennsylvania law that admissibility of evidence rests within the sound discretion of the trial court and an evidentiary decision will be reversed only upon a showing that the discretion was abused. Commonwealth v. Chmiel, 889 A.2d 501,

8

521 (Pa. 2005), cert. denied, 549 A.2d U.S. 848, 127 S.Ct. 101 (2006), citing

Commonwealth v. Boczkowski, 846 A.2d 75 (Pa. 2004); and Commonwealth v. Reid,

811 A.2d 530, 550 (Pa. 2002). Further, an erroneous evidentiary ruling by a trial court

does not require an appellate court to grant relief where the error was harmless.

Chmiel, 889 A.2d at 521, citing Commonwealth v. Young, 748 A.2d 166, 193 (Pa.

1999).

Admissibility of a prior act depends on relevance and probative value.

Commonwealth v. Bullock, 948 A.2d 818, 827 (Pa.Super. 2008), quoting Commonwealth

v. Grzegorzewski, 945 A.2d 237, 239 (Pa.Super. 2008), app. denied, 954 A.2d 575 (Pa.

2008), quoting Commonwealth v. Drumheller, 808 A.2d 893, 904 (Pa. 2002). "Evidence

is relevant if it logically tends to establish a material fact in the case, tends to make a fact

at issue more or less probable or supports a reasonable inference or presumption

regarding a material fact." Id.

Evidence admissible under Pa.R.E. 404(b) is not limited to crimes that have

been proven beyond a reasonable doubt in court. Commonwealth v. Lockcuff, 813

A.2d 857, 861 (Pa.Super. 2002), app. denied, 825 A.2d 638 (Pa. 2003). "It

encompasses both prior *crimes* and prior *wrongs and acts,* the latter of which, by their

nature, often lack 'definitive proof.'" Id.

Pennsylvania courts have held that evidence of other crimes is admissible where

that evidence forms part of the chain or sequence of events which formed the history of

the case or was part of the natural development of the facts. Commonwealth v.

Simmons, 662 A.2d 621, 635 (Pa. 1995), citing Commonwealth v. Lark, 543 A.2d 491,

497 (Pa. 1988); and Commonwealth v. Green, 413 A.2d 651, 654 (Pa. 1980).

9

As discussed above, evidence was presented concerning the large multi-agency drug investigation and the wiretaps as it applied to co-defendant Philip DiMatteo. It was Mr. DiMatteo's phone on which the wiretap orders were approved and recorded. In addition, the pole camera was located outside Mr. DiMatteo's residence. It was proper for the Commonwealth to present evidence concerning the drug trafficking organization and the various roles and workings of those in contact with the organization. Mr. DiMatteo was not on trial with Defendant because he pled guilty prior to this trial. He was not a cooperating witness. In fact, when the Defendants called him to testify at trial, he asserted his Fifth Amendment right to remain silent. (N.T., 1/14/13, pgs. 25-27).

Evidence admitted regarding the drug trafficking organization and those involved was extremely limited to what would help the jury understand the evidence against Defendant and his co-defendant on trial, Mr. Grier. There were thousands of drug related intercepted phone conversations and multiple drug buys and busts over the lengthy investigation, resulting in fourteen co-defendants being charged. Only a fraction of this evidence was admitted at this trial.

This court limited any prejudice to Defendant concerning evidence that was admissible against the co-defendants but not against Defendant by properly instructing the jury. First, the court instructed the jury with regard to evidence concerning co-defendant DiMatteo as follows:

> Ladies and gentlemen, I am going to give you a cautionary
> instruction before I allow this.
>     You are about to hear evidence concerning Phillip DiMatteo
> and his drug organization. This can be considered only for the
> purpose of giving you information, background on Mr. DiMatteo for

10

the development of the events leading to the present charges pending against these three individuals, defendants.

. . .

The evidence you are about to hear concerning Phillip DiMatteo can be considered only for the purpose of giving you information and background on Mr. DiMatteo for the purpose of development of the events that lead to the present charges on these three defendants and the specific charges against each of them.

This DiMatteo information is not to be considered for any other purpose. The matters that you will hear are not to be employed by you to form any inferences with respect to these three defendants in those specific Phil DiMatteo matters about which you will hear testimony.

You must not consider the specific instances regarding Mr. Phillip DiMatteo as evidence against any of these three defendants, Mr.Shelton, Mr. Rivas and Mr. Grier.

As you know, if you find any of these defendants guilty of committing any of the crimes for which they are charged, it must be only because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that the defendant committed each and every element of the crimes charged in their specific cases.

So with that cautionary instruction, you may proceed.

(N.T., 1/8/13, pgs. 134-136).

Thereafter, the court gave the following cautionary instruction to the jury immediately before evidence of the recorded phone conversations was presented:

So another thing I have to tell you is we have two separate defendants here on trial. They are being tried together, but they each face independently and separately from each other a series of charges. You must consider each piece of evidence you are about to hear only as it relates to the defendant who's involved in that tape.

If you find something in the tape with one of the defendants that you think is compelling evidence, you are not to apply it in any way or let it give any negative inference in any way towards the other defendant. Each defendant is to be judged by evidence presented, specifically, against that defendant.

And in terms of the tapes, there is, it will be clear which defendant is being discussed. And that's the defendant, only defendant, you can apply that evidence to. Whether you accept the evidence or whether you reject it, it relates to that person.

11

Again, if you find either of those defendants guilty of committing any of the crimes for which he is charged, it must be because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that that defendant committed each and every element of each crime charged. Thank you.

(N.T., 1/10/13, pgs. 171-172).

During the questioning of Trooper Hope about the traffic stop of Mr. Curry and just prior to the jury momentarily seeing the drugs which were confiscated from Mr. Curry, that were intended to be delivered to Mr. DiMatteo, the court gave the jury the following cautionary instruction:

Ladies and gentlemen of the jury, again, I am going to give you a cautionary instruction.

As you know, you were given an introduction by Mr. Kelly about the stages of his presentation. And I am allowing in some evidence concerning the Phillip DiMatteo operation only to give you information and background on Mr. DiMatteo, background that ties in to why there was a wire, and for the development of the events leading to present charges against these two defendants.

You are going to be presented with some evidence shortly that is not to be considered for any specific charge against these defendants. And it is only for the background that I have just described, and development of the events leading to the present charges for which I am allowing it.

You are not to use the evidence that you are about to be presented with by you to form any inference with respect to these defendants, Mr. Rivas and Mr. Grier, on the specific charges to which they are before you.

You must not consider the specific information regarding the Phil DiMatteo matters, as evidence against, or anyone else involved in the Phil DiMatteo matters who are not defendants here, you can't use any specific instances for those others against any of the defendants, not Mr. Rivas or not Mr. Grier.

By the way, if you find either of these two defendants guilty of committing crimes for which they are charged, it must be because the Commonwealth has demonstrated at the conclusion of the case by evidence proving beyond a reasonable doubt that the defendant committed each and every element of any crimes charged.

Proceed.

12

(N.T., 1/9/13, pgs. 191-193).

In addition, the court gave the following instructions to the jury in the final charge:

Now, members of the jury, I am going to remind you that throughout this charge, when I refer to defendant or defendants as I read the charge, you must apply the instructions separately and independently to each defendant, Mr. Jerome Grier and Mr. Khye Rivas. Although evidence has been presented in one trial, each defendant and his charge must be considered separately and independently from the other.

At the outset, when Mr. Kelly was presenting information about the background of Phillip DiMatteo, the individual on whose phone the wire was placed, I cautioned you that the background evidence you heard concerning DiMatteo could be only considered for the development of the events leading to the present charges. It was not to be considered for any other purpose.

I am now restating that cautionary and limiting instruction that still controls. If you find either of these defendants guilty of committing the crimes for which he is charged, it must be because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that the defendant committed each and every element of the crimes charged in these matters.

…

There is a further rule that restricts use by you of the evidence offered to show that each defendant made statements concerning crimes charged against that individual defendant as a statement made before trial may be considered as evidence only against the defendant who made that statement. Thus, you may consider any statements only as evidence against the defendant who made it. You must not, however, consider the statement as evidence against the other defendant. You must not use the statement in any way against him.

(N.T., 1/15/13, pgs. 82-83 and 89-90).

Since jurors are deemed to follow the court's directions, these proper instructions were sufficient to remove any potential spillover prejudice to the defendant against whom the evidence was not admitted. The evidence was properly admitted for the limited purpose of establishing the chain or sequence of events which formed the history of the case and the natural development of the facts. It assisted the triers of fact

13

to understand the workings of the drug trafficking organization and Defendant's role within it. Accordingly, Defendant's issues on appeal regarding the admissibility of said evidence are without merit.

**Weight of the Evidence:**

Defendant's fourth issue raised on appeal is that the "[c]onviction on the charges of Possession with Intent to Deliver was against the weight of the evidence in that Mr. Rivas was not arrested in possession of any controlled substance, and was convicted based on wiretap recordings only." Defendant's fifth issue raised on appeal is that the "[s]olicitation convictions were against the weight of the evidence in that no evidence was offered that the drugs obtained from Mr. DiMatteo were for resale, nor could an inference be made where amounts [weight of drugs] were not proven."

It must be noted that Defendant's Post-Sentence Motion raised the weight of the evidence claim regarding the conviction on the charges of Possession with intent to deliver. However, Defendant's Post-Sentence Motion raised the sufficiency of the evidence claim regarding the conviction on the charges of solicitation. Defendant did request the right to supplement the motion after receipt of the transcripts and in his brief in Support of the Post-Sentence Motion argued that the convictions on both possession with intent to deliver and solicitation were against the weight of the evidence. The court examined the weight of the evidence claim on both charges and found the claims to be without merit.

"A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." Widmer, 744 A.2d 745, 751, citing Commonwealth v. Whiteman, 485 A.2d 459 (Pa.Super. 1984).

14

"Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." Widmer, 744 A.2d at 751, citing Tibbs, 457 U.S. at 38, n. 11, 102 S.Ct. 2211. An allegation that the verdict is against the weight of the evidence is addressed by and at the discretion of the trial court. Widmer, 744 A.2d at 751-752, citing Commonwealth v. Brown, 648 A.2d 1177 (Pa. 1994).

A new trial should not be granted due to a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Widmer, 744 A.2d at 752, citing Thompson v. City of Philadelphia, 493 A.2d 669, 673 (Pa. 1985). "A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" Id.

"'[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.'" Commonwealth v. Sullivan, 820 A.2d 795, 806 (Pa.Super. 2003), quoting Commonwealth v. Goodwine, 692 A.2d 233, 236 (Pa.Super. 1997), app. denied, 700 A.2d 438 (Pa. 1997). Stated another way, the evidence must be "so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" Sullivan, 820 A.2d at 806, quoting Commonwealth v. La, 640 A.2d 1336, 1351 (Pa.Super. 1994), app. denied, 655 A.2d 986 (Pa. 1994).

In addition, the Pennsylvania Supreme Court has been clear that "'appellate review

15

of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.'" Sullivan, 820 A.2d at 806, quoting, Widmer, 744 A.2d at 751-752. "[I]t is the trial court's sense of justice that must be shocked before a new trial may be granted on a claim that the verdict was against the weight of the evidence." Sullivan, 820 A.2d at 807, n. 11, citing Commonwealth v. Brown, 648 A.2d 1177, 1191 (Pa. 1994).

Accordingly, this court applied the above standard when reviewing the evidence presented at trial. Since Defendant conceded that there was sufficient evidence to support each material element of possession with intent to deliver and solicitation, we painstakingly examined the testimony of the numerous witnesses and voluminous evidence presented to determine if the evidence was so tenuous, vague and uncertain that the verdict shocks the conscience of the court. After exhaustive review of the voluminous evidence presented at trial from January 7, 2013 through January 15, 2013, this court unequivocally determines that that the verdict on the two challenged crimes is not against the weight of the evidence. We will address each crime separately.

Possession with Intent to Deliver

In his Brief in Support of his Post-Trial Motion, filed June 5, 2013, Defendant argues that the convictions for possession with intent to deliver were against the weight of the evidence because the wiretapped recordings of the conversations on April 14, 2010 and May 4 & 5, 2010 fail to confirm that the drugs were delivered by Mr. DiMatteo to Defendant. An additional factor that he argues to prove that the verdict was against the weight of the evidence is that he was not in possession of drugs when he was arrested.

16

First, Defendant points to very specific evidence to support his argument. However, we must examine the evidence as a whole. For example, the conversations surrounding the April 14, May 4 and May 5th conversations and observational evidence from pole cameras establish that drugs were delivered to Defendant and that he intended to deliver them to others. Second, the fact that Defendant did not have drugs in his possession on the date of his arrest does not negate all the other evidence that establish these charges.

It is well established that the "'Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, … the entire record must be evaluated and all evidence actually received must be considered.'" Commonwealth v. Baker, 72 A.3d 652, 658 (Pa.Super. 2013), quoting Commonwealth v. Knox, 50 A.3d 749, 754 (Pa.Super. 2012), appeal granted on other grounds, 68 A.3d 323 (Pa. 2013).

As discussed above, Defendant concedes that there is sufficient evidence to sustain the verdict. Therefore, Defendant concedes that there was sufficient evidence that he possessed drugs and had the intent to deliver them to another individual. Hence, his challenge is that the verdict shocked the conscience of the court because the specific conversations did not establish delivery and that he was without drugs at the time of his arrest. This argument is inconsistent with Pennsylvania law that allows circumstantial evidence to establish the elements of the possession with intent to deliver offense.

Evidence was presented at trial concerning the large multi-agency investigation of a drug trafficking ring in Chester County. The investigation included Wiretap

17

Authorization Orders issued by the Superior Court and the compilation of thousands of intercepted communications regarding the purchasing, selling and transferring of drugs and money. It was co-defendant Mr. DiMatteo's phone on which the wiretap orders were approved and recorded. Within these communications there were very few times actual references to drugs, weights or money was used. Rather, other terms were used to covertly communicate. In addition, observational evidence was presented by the officers, much of which included video surveillance from a pole camera that was located outside Mr. DiMatteo's residence on which the officers observed the arrival and departure of the many co-defendants. The combination of what the officers heard and observed resulted in Defendant's arrest as well as the arrest of fifteen other defendants who were involved in this drug trafficking organization.

At trial, Pennsylvania State Police Trooper Joseph Fanning was found to be an expert in narcotics trafficking and Special Agent Mark Koss of the Drug Enforcement Administration was found to be an expert in narcotics trafficking and narcotics trafficking investigations. (N.T., 1/9/13, p. 59 and N.T., 1/10/13, p. 78). Both experts testified about how numerous certain terms were used within this drug trafficking organization.

Pennsylvania courts have "determined that in narcotics investigations involving legally intercepted telephone conversations, expert testimony regarding coded and cryptic language relating to criminal activity and sales of controlled substances is permissible under Rule 701." Commonwealth v. Huggins, 68 A.3d 962, 967 (Pa.Super. 2013), citing Commonwealth v. Cuevas, 61 A.3d 292 (Pa.Super. 2013); and Commonwealth v. Doyen, 848 A.2d 1007 (Pa.Super. 2004). The expert testimony interpreting the conversations and the phone calls setting up meeting times for drug or money exchange followed by the

18

arrival or departure of Defendant at DiMatteo's house was very compelling circumstantial evidence of Defendant's possession of drugs with the intent to deliver them.

The jury's verdict on these charges is not contrary to the evidence as to shock one's sense of justice. Regarding the April 14, 2010 charge, an intercepted phone call on that date reveals that Defendant requested an ounce of cocaine from Mr. DiMatteo. (Exhibit C-36, p. 141). A follow up phone conversation between Defendant and DiMatteo includes Defendant's complaining to DiMatteo that the drugs he received from him were inferior but that Defendant was still going to sell them. (Exhibit C-36, pgs. 144-146). Taking into account all evidence presented and from these conversations, the jury could reasonably infer that Defendant received cocaine from DiMatteo on April 14, 2010 and that he planned to distribute it.

Regarding the May 4, 2010 charge, an intercepted phone call on that date has Defedant asking DiMatteo to put some drugs aside for him. (Exhibit C-36, p. 240). An intercepted phone call the following day contains complaints from Defendant that the drugs he received from DiMatteo the prior night were even more inferior than the drugs previously acquired. (Exhibit C-36, pgs. 249-250). Taking into account all evidence presented and from these conversations, the jury could reasonably infer that Defendant received cocaine from DiMatteo on May 4, 2010 and that he planned to distribute it.

Just because drugs were not actually recovered in this case the jury's verdict on these charges is not contrary to the evidence as to shock one's sense of justice. For the above listed reasons, Defendant is not entitled to a new trial on the two possession with intent to deliver charges.

19

Solicitation

In his Brief in Support of his Post-Trial Motion, filed June 5, 2013, Defendant argues that the convictions for solicitation were against the weight of the evidence because the "purchaser of a controlled substance cannot be charged with solicitation where the purchaser himself cannot be convicted of delivery or possession with intent to deliver." (Defendant's Brief in Support of Post-Trial Motion, p. 3.)  In support of this argument, he cites the case of Commonwealth v. Fisher, 627 A.2d 732 (Pa.Super. 1993).  This case is distinguishable from the case at hand.

In Fisher the police used a beeper of a known drug dealer and pretended to set up a drug deal with that defendant.  627 A.2d at 732.  When he arrived at the location to make the purchase he was arrested and charged with solicitation to deliver a controlled substance.  Id.  The court held that 18 Pa.C.S.A. § 904(b) precluded the conviction because even if the facts were as the customer believed and the drug deal proceeded as planned, the defendant would only have been guilty of possession and not delivery due to the small amount of drugs that were solicited in that scenario.  Id. at 733-734.

The facts in the case at hand are very different than those in Fisher.  In Fisher, there was only one phone call to set up the deal and the defendant was arrested upon arrival at the location to purchase the drugs.  627 at 732.  Other than the requested weight of the drugs, there was no additional evidence to establish the defendant's intent.  In the current case, there was a large amount of evidence at trial that established Defendant's intent upon acquiring the drugs.  As discussed above, there

20

were months of recorded phone conversations that reveal that Defendant intended to resell the cocaine he acquired from DiMatteo. They even discussed Defendant's customers and the quality of the drugs he received. In addition to the phone conversations, the police observed Defendant arriving at DiMatteo's at the agreed upon times in which the drugs were to be exchanged. There was also expert testimony in this case that established Defendant's actions and intent.

Therefore, Defendant's argument that the convictions for solicitation were against the weight of the evidence is without merit.

**Sufficiency of the Evidence:**

Defendant's fifth issue raised on appeal is that the "[e]vidence for dealing in proceeds of unlawful activities, 18 Pa.C.S.A. 5111, was insufficient as a matter of law to establish the defendant's guilt beyond a reasonable doubt in that evidence was not produced that showed a financial transaction occurred with knowledge that the property involved represents the proceeds of unlawful activity, and that Mr. Rivas acted with the intent to promote the carrying on of the unlawful activity." We disagree.

The standard for reviewing the sufficiency of the evidence is "whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Commonwealth v. Matthew, 909 A.2d 1254, 1256-57 (Pa. 2006), citing Commonwealth v. Williams, 896 A.2d 523, 535 (Pa. 2006), cert. denied, 127 S.Ct. 1253 (2007), and Commonwealth v. Randolph, 873 A.2d 1277, 1281 (Pa. 2005).

In addition, all reasonable inferences drawn from the evidence must be viewed in the light most favorable to the Commonwealth. Commonwealth v. McCollum, 926 A.2d

21

527, 530 (Pa.Super. 2007), quoting Commonwealth v. Earnest, 563 A.2d 158, 159 (Pa.Super. 1989). "The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt." McCollum, 926 A.2d at 530, citing Commonwealth v. Swerdlow, 636 A.2d 1173 (Pa.Super. 1994). "'This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.'" McCollum, 926 A.2d at 530, quoting Swerdlow, 636 A.2d at 1176.

A conviction must be based on more than mere suspicion or conjecture, however, the Commonwealth does not need to establish guilt to a mathematical certainty. McCollum, 926 A.2d at 530, quoting Commonwealth v. Badman, 580 A.2d 1367, 1372 (Pa.Super. 1990). "Moreover, the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." Commonwealth v. Marrero, 914 A.2d 870, 872 (Pa.Super. 2006), citing Commonwealth v. Bullick, 830 A.2d 998, 1000 (Pa.Super. 2003).

The court may not weigh the evidence and substitute its judgment for the fact-finder. Id. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." Marrero, 914 A.2d at 872, citing Commonwealth v. DiStefano, 782 A.2d 574, 582 (Pa.Super. 2001), app. denied, 806 A.2d 858 (Pa. 2002). When evaluating the credibility of the witnesses and evidence as well as the weight of the evidence, the fact-finder is free to believe all, part, or none of the evidence presented. Commonwealth v. Faulk, 928 A.2d 1061, 1069 (Pa.Super. 2007), quoting Commonwealth v. Stevenson, 894 A.2d 759, 773 (Pa.Super.

22

2006), app. denied, 917 A.2d 846 (Pa. 2007).

The uncorroborated testimony of one victim, if believed by the trier of fact, is sufficient to convict a defendant, if all the elements of a crime are established beyond a reasonable doubt. Commonwealth v. Mack, 850 A.2d 690, 693 (Pa.Super. 2004), citing Commonwealth v. Davis, 650 A.2d 452, 455 (Pa.Super. 1994), app. granted, 659 A.2d 557, affirmed, 674 A.2d 214 (Pa. 1996).

An individual violates the statute of Dealing in Proceeds of an Unlawful Activity if he conducts a financial transaction "with knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity, the person acts with the intent to promote the carrying on of the unlawful activity." 18 Pa.C.S.A. § 5111(a)(1).

The evidence, taken in the light most favorable to the Commonwealth, shows that Defendant was involved in a drug trafficking organization over a period of months in 2010. As discussed above, he solicited drugs from Mr. DiMatteo to sell to others. They discussed the price and quantity of drugs needed, Defendant's drug customers and on two occasions they even discussed the poor quality of the drugs purchased by Defendant. From all the evidence set forth at trial, the jury could reasonably infer that at least a portion of the money he collected from selling the drugs he obtained from DiMatteo was then paid back to DiMatteo to obtain the next batch of drugs to sell.

There was sufficient evidence that Defendant knew that the money he obtained from selling the illegal drugs were proceeds of that unlawful activity and that he intended to promote the carrying on of the illegal drug selling activity by continuing to purchase more drugs to sell to his customers. Accordingly, Defendant's issue on appeal is without

23

merit.

## Mandatory Sentence:

Defendant's fifth issue raised on appeal is that his "mandatory sentence for PWID [April 14, 2010], pursuant to 18 Pa. C.S. § 7508, Drug trafficking sentencing and penalties, should be vacated because facts that increased his sentence, in this case, the weight of the cocaine, are an element that should have been submitted to the Jury and found beyond a reasonable doubt. Alleyne vs. U.S., 457 Fed. Appx. 348." We believe that Defendant's citation to this 4th Circuit United States Court of Appeals case is incorrect. We believe that Defendant is setting forth a proposition that was addressed by the United States Supreme Court in Alleyne v. United States, 133 S.Ct. 2151 (2013).

The Alleyne court held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. … Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S.Ct. at 2155.

In Commonwealth v. Watley, the Pennsylvania Superior Court held that 18 Pa.C.S.A. § 7508(b) is unconstitutional because it does not conform to Alleyne and allows mandatory minimum sentencing factors to be decided by a judge at sentencing rather than being submitted to a jury to be found beyond a reasonable doubt. --- A.3d ---, 2013 WL 6164340, 7-8 (Pa.Super. 2013).

Defendant was sentenced on April 10, 2013. The United States Supreme Court decided Alleyne on June 17, 2013 and the Pennsylvania Superior Court decided Watley on November 25, 2013. Therefore, this court sentenced Defendant prior to the Alleyne

24

mandates and prior to <u>Watley</u> holding 18 Pa.C.S.A. § 7508(b) to be unconstitutional. The court followed the direction of 18 Pa.C.S.A. § 7508(b) and considered evidence presented at trial as well as additional evidence set forth at the sentencing hearing to determine, by a preponderance of the evidence, that the mandatory minimum drug trafficking sentence was applicable to Defendant's possession with intent to deliver conviction.

"Ordinarily, new rulings pertaining to cases on direct appeal are entitled to retroactive effect so long as the applicable issue is preserved." <u>Watley</u>, 2013 WL 6164340 at 7. Defendant has preserved this issue on appeal and the <u>Alleyne</u> and <u>Watley</u> mandates should be applied retroactively to Defendant's sentence. Therefore, this case should be remanded for resentencing.

## Recidivism Risk Reduction Initiative:

Defendant's eighth issue raised on appeal is that "[t]he Defendant is an 'eligible offender' under the provisions of the Recidivism Risk Reduction Initiative [RRRI] and his sentence should be modified and reduced in conformance with the RRRI program." We disagree.

Pursuant to 61 Pa.C.S.A. § 4503, an eligible offender for the Recidivism Risk Reduction Initiative is "[a] defendant or inmate convicted of a criminal offense who will be committed to the custody of the department and who … [h]as not been … found guilty of or was convicted of an offense … under 18 Pa.C.S. Ch. 61 (relating to firearms and other dangerous articles)…." In 2012 under docket number 444-11, Defendant was previously found guilty and sentenced for the crime of persons not to possession firearms in violation of 18 Pa.C.S.A. § 6105.

25

This previous conviction results in Defendant being an ineligible offender for the Recidivism Risk Reduction Initiative and it was proper for the court to not grant Defendant's request for RRRI. Accordingly, Defendant's issue on appeal is without merit.

BY THE COURT:

PHYLLIS R. STREITEL, J.

DATE: 12/12/13

26

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs : CRIMINAL ACTION

KHYE RIVAS
DEFENDANT : NO. 1411-11

Stephen Kelly, Esquire, on behalf of the Commonwealth.
Brenda Jones, Esquire, on behalf of Defendant.

## OPINION

On February 14, 2012, Defendant filed a Motion to Suppress Wiretap Evidence

and all Derivative Evidence as Fruit of the Poisonous Tree. A hearing was held on

March 19, 2012. The Commonwealth's Memorandum of Law was filed April 12, 2012

and Defendant's Memorandum of Law was filed June 26, 2012.

Defendant requests suppression of any and all intercepted communications

obtained through illegal surveillance captured via electronic monitoring of the phones of

DiMatteo and requests suppression of any derivative evidence as fruit of the poisonous

tree.

On March 19, 2010, the Chester County District Attorney's Office presented an

Application for an Order Authorizing the Interception of Electronic and Wire

Communications to the Pennsylvania Superior Court, requesting to intercept electronic

and wire communications of co-defendant, Phillip Dimatteo, who utilizes Sprint Nextel

Corporation telephone number 215-239-0542 and Nextel Direct Connect number

168*651*3330. As required, an Affidavit in Support of Application was attached, in

addition to other Exhibits. The Honorable Paula Francisco Ott reviewed the Application

and supporting documentation and determined that probable cause existed in support of

1

the request and on March 19, 2010 executed an Order Authorizing the Interception of Electronic and Wire Communications.

Interception of these electronic and wire communications began on March 22, 2010. Pursuant to the Authorization Order, the Chester County District Attorney's Office submitted Progress Reports to the Superior Court.

On April 20, 2010, the Chester County District Attorney's Office presented to Superior Court Judge Ott an Application for an Order Extending the Authorization for the Interception of Electronic and Wire Communications of co-defendant Dimatteo who utilizes Sprint Nextel Corporation telephone number 215-239-0542 and Nextel Direct Connect number 168*651*3330. As required, an Affidavit in Support of Application was attached, in addition to other Exhibits. The Honorable Paula Francisco Ott reviewed the Application and supporting documentation and determined that probable cause existed in support of the request and on April 20, 2010 executed an Order Extending the Authorization of the Interception of Electronic and Wire Communications.

Interception of these electronic and wire communications continued and the Chester County District Attorney's Office continued to submit Process Reports to the Superior Court. Interception was terminated on May 19, 2010.

On May 18, 2010, the Chester County District Attorney's Office presented an Application for an Order Authorizing the Interception of Electronic and Wire Communications to the Pennsylvania Superior Court, requesting to intercept electronic and wire communications of co-defendant Dimatteo, who utilizes Sprint Nextel Corporation telephone number 610-350-5789 and Nextel Direct Connect number 168*663*15526. As required, an Affidavit in Support of Application was attached, in

2

addition to other Exhibits. The Honorable Paula Francisco Ott reviewed the Application and supporting documentation and determined that probable cause existed in support of the request and on May 18, 2010 executed an Order Authorizing the Interception of Electronic and Wire Communications.

Interception of these electronic and wire communications began on May 19, 2010. Pursuant to the Authorization Order, the Chester County District Attorney's Office submitted Process Reports to the Superior Court. Interception was terminated on June 8, 2010.

The wiretap applications and Orders were issued by the Superior Court pursuant to the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5701, etc. seq. Pursuant to the act, "[a]ny aggrieved person who is a party to any proceeding in any court, board or agency of this Commonwealth may move to exclude the contents of any wire, electronic or oral communication, or evidence derived therefrom, on any of the following grounds...." 18 Pa.C.S.A. § 5721.1 (b). The grounds on which a motion to exclude may be based are as follows:

> (1) Unless intercepted pursuant to an exception set forth insection 5704 (relating to exceptions to prohibition of interception and disclosure of communications), the interception was made without prior procurement of an order of authorization under section 5712 (relating to issuance of order and effect) or an order of approval under section 5713(a) (relating to emergency situations) or 5713.1(b) (relating to emergency hostage and barricade situations).
>
> (2) The order of authorization issued under section 5712 or the order of approval issued under section 5713(a) or 5713.1(b) was not supported by probable cause with respect to the matters set forth in section 5710(a)(1) and (2) (relating to grounds for entry of order).
>
> (3) The order of authorization issued under section 5712 is materially insufficient on its face.

3

(4) The interception materially deviated from the requirements of the order of authorization.

(5) With respect to interceptions pursuant to section 5704(2), the consent to the interception was coerced by the Commonwealth.

(6) Where required pursuant to section 5704(2)(iv), the interception was made without prior procurement of a court order, or without probable cause.

18 Pa.C.S.A. § 5721.1(b).

When considering a motion to exclude under subsection (b)(2) alleging that the authorization order was not supported by probable cause, the court shall examine both the written application under section 5710(a) and all matters that were presented to the judge under section 5710(b). 18 Pa.C.S.A. § 5721.1(c)(2).

A defendant shall bear the burden of proving by a preponderance of the evidence the grounds for exclusion asserted under 18 Pa.C.S.A. § 5721.1 subsection (b)(3) and (4). 18 Pa.C.S.A. § 5721.1(c)(3). The Commonwealth shall bear the burden of proof by a preponderance of the evidence with respect to exclusion claims under 18 Pa.C.S.A. § 5721.1 subsection (b)(1), (2) and (5). 18 Pa.C.S.A. § 5721.1(c)(4). With respect to exclusion claims under 18 Pa.C.S.A. § 5721.1 subsection (b)(6), the defendant shall have the initial burden of demonstrating by a preponderance of the evidence that the interception took place in his home. Once he meets this burden, the burden shall shift to the Commonwealth to demonstrate by a preponderance of the evidence that the interception was in accordance with section 5704(2)(iv). 18 Pa.C.S.A. § 5721.1(c)(5).

Defendant sets forth the following arguments in support of his request to suppress the evidence of the electronic and wire communications. First, Defendant alleges that the Order of Authorization was not supported by probable cause. Second,

4

he argues that he is entitled to a <u>Franks</u> hearing because the affidavits in support of the wiretap applications were based on false statements or made with reckless disregard for the truth and that these statements should be set aside and the affidavit should be reviewed without those statements. He alleges that the affiants spoke falsely or with reckless disregard for the truth when they stated that the four individuals listed were the targets of the wiretap, when in reality the only target was Rodriguez-Cruz.

Defendant further argues that the Commonwealth is unable to show that normal investigative procedures had been tried or would fail and that the Commonwealth violated 18 Pa.C.S.A. § 5721(b) by continuing the wiretaps longer than necessary to achieve the objective. He argues that the Commonwealth exceeded the scope of the April 20, 2010 Extension Order by listening to calls on/to cell number 215-239-0542 when it was no longer being used by DiMatteo. Therefore, all interceptions made from May 12, 2010 to May 18, 2010 purported to be from/to Defendant should be suppressed.

We shall address each of Defendant's arguments. This court disagrees with Defendant's arguments that the Order of Authorization was not supported by probable cause. As a matter of fact, there is overwhelming evidence that the cell phones in question had been and would continue to be utilized by co-defendant Dimatteo for drug activities. Three experienced drug investigators executed the affidavit outlining their investigation into the Rodriguez-Cruz Drug Trafficking Organization and the significant role Dimatteo is alleged to have played in selling drugs in Chester County. This included calls confidential informants placed to Dimatteo on the 215-239-0542 phone number to set up and make arrangements for the drug buys.

5

The evidence presented also included the analysis of the data obtained from the pen register and trap and trace device records authorized by Federal Magistrate Judge Linda Caracappa of the Eastern District of Pennsylvania. Once the first wiretap was in place and the calls were being intercepted, the evidence confirmed the nature of the calls and that the phone was being used for drug related purposes, which supported the affidavit in support of the extension of the wiretap as well as the affidavit in support of the wiretap on the phone with the number 610-350-5789. Therefore, Defendant's argument that the Order of Authorization was not supported by probable cause must fail.

This court also disagrees with Defendant's argument that he is entitled to a Franks hearing because the affidavits in support of the wiretap applications were based on false statements or made with reckless disregard for the truth and that these statements should be set aside and the affidavit should be reviewed without those statements.

The United States Supreme Court has held that, where a "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks v. Delaware, 438 U.S. 154,155-156, 98 S.Ct. 2674, 2676 (1978). "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable

6

cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id.

In the case at hand, Defendant has failed to make a substantial preliminary showing that a false statement was included in the warrant affidavits. Defendant argues that there are two things in the affidavits that are false. First, that it is false when the affiants claimed that normal investigative techniques had been tried and/or would not work against the targets. Second, Defendant alleges that it is false when the affiants claimed that there was four targets of the wire when the true and sole target of the investigation and wire was Rodriguez-Cruz. Defendant's claims are inaccurate.

Regarding Defendant's claim that affiants falsely set forth that normal investigative techniques had been tried and/or would not work against the targets is misleading. What the affiants actually set forth in their affidavits were exactly what normal investigative techniques were tried and how the wiretap for the interception of electronic and wire communication would be needed to investigate and lead to the source or sources of the cocaine that the drug organization was distributing. Specifically, the affiants set forth their use of confidential informants, visual surveillance, analysis of data from toll records, call detail records, pen registrars, and trap and trace device techniques.

Defendant has been unable to make a substantial preliminary showing that the following conclusion drawn by the affiants was false:

> Based on your affiants' experience, it is believed that the investigation of Phillip DiMateo indicates that he and others as yet unknown are involved in the distribution of cocaine in and around Philadelphia and Chester Counties in Pennsylvania. Although law enforcement has employed many of the usual investigative approaches that are normally utilized in cases of this type, those techniques have not been successful in producing specific

7

information regarding the extent of DiMatteo's drug trafficking, the identity and location of his source(s) of supply of cocaine, or the manner in which the illegal operation is conducted. Your affiants, and others who have been involved in similar investigations of this type of high level drug trafficking, have experienced difficulty in using normal investigative methods due to the inherent clandestine nature of such activity and the awareness on the part of the suspects of drug enforcement techniques. In addition, these clandestine operations frequently utilize several bases of operation. These locations in the present investigation are as yet unknown. The dates, times, and place of drug transactions, as well as other information concerning the ongoing criminal conspiracy, the object of which is the multi-county distribution and possession of controlled substances, can be ascertained and presented as evidence sufficient to convict the participants only by monitoring telephone conversations between these participants.

This court also disagrees with Defendant's claim that affiants falsely set forth that there were four targets of the wire when the true and sole target of the investigation and wire was Rodriguez-Cruz. Defendant's argument is based on a question presented to one of the affiants at Dimatteo's preliminary hearing. Trooper Fallon stated that Rodriquez-Cruz was the reason and purpose as to why law enforcement sought the wiretap for Dimatteo's phone.

This testimony must be viewed in conjunction with the warrant affidavit. There are overwhelming averments by the three affiants, not just Trooper Fallon, that the investigation was focused on the entire Rodriguez-Cruz Drug Trafficking Organization. The affidavit methodically goes through all of the actions of individuals involved and details the information compiled against the known players in this drug business. It is abundantly clear that the focus of the investigation was to gather evidence against not only the individuals to whom the drugs were being distributed but also to find the source of the drugs that Dimatteo and the co-defendants obtained. Therefore, this court does not find that the affiants falsely set forth the targets of the investigation in the affidavit.

8

Defendant has failed to make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiants in the warrant affidavit. Accordingly, Defendant is not entitled to a Franks hearing.

Defendant's final argument is that the Commonwealth violated 18 Pa.C.S.A. § 5721(b) by continuing the wiretaps longer than necessary to achieve objective. He argues that the Commonwealth exceeded the scope of the April 20, 2010 Extension Order by listening to calls on/to cell number 215-239-0542 when it was no longer being used by DiMatteo. He requests that all interceptions made from May 12, 2010 to May 18, 2010 purported to be from/to Defendant should be suppressed.

It is apparent to this court that the wiretap was not continued longer than necessary to achieve the objective of identifying the source(s) of the drugs as well as all the individuals to whom the drugs were distributed or the full extent of the method of operations. As the final reports establish, while the wiretaps gathered information and helped identify some of the players involved, there were still many unknown individuals yet to be identified that were involved with this drug operation. Therefore, this argument must fail.

Pursuant to 18 Pa.C.S.A. § 5721.1(b)(4), a party may move to exclude the contents of any wire, electronic or oral communication, or evidence derived therefrom, if the interception materially deviated from the requirements of the order of authorization. Thus, the April 20, 2010 Extension Order must be examined in its entirety to determine if the Commonwealth exceeded the scope of the order by listening to calls on/to cell number 215-239-0542 when it was no longer being used by DiMatteo.

9

Paragraph one of the order states as follows:

Intercept electronic and wire communications (including background conversations in the vicinity of the subject telephone while the telephone is off the hook or otherwise in use) including all Text Messaging communications, and the content thereof, (Short Message Service (SMS)) of Phillip DiMatteo, who utilizes Sprint Nextel Corporation telephone number **215-239-0542** and Nextel Direct Connect number **168*651*3330** and others known and yet unknown (including background conversations in the vicinity of the subject telephone while the telephone is off the hook or otherwise in use) and including all Text Messaging communications and content thereof ....

Paragraph three of the order states that interception "shall continue until communications are intercepted which reveal the complete manner in which Philip DiMatteo and possibly others known and as yet unknown, participate in the illegal drug distribution enterprise ...." The order later states that "Sprint Nextel Corporation make available and provide to investigators all direct connect and text messaging to and from Phillip DiMatteo, who utilizes Sprint Nextel Corporation telephone number **215-239-0542** and Nextel Direct Connect number **168*651*3330** (IMSI number 316010158942635)."

This court has determined that the Commonwealth did not exceed the scope of the April 20, 2010 Extension Order by listening to a limited number of calls on/to cell number 215-239-0542 when in the possession of Mr. Carter, who continued to use the phone to conduct the business of the drug operation and continued to speak to Defendant on that phone. Therefore, Defendant's argument is denied.

Based upon the foregoing, the following Order is entered:

## ORDER

AND NOW, this ____10____ day of October, 2012, upon consideration of

Defendant's Motion to Suppress the Contents of any Electronic Surveillance, filed July

18, 2012, the hearing held on March 19, 2012, Defendant's Memorandum of Law, filed

April 2, 2012 and the Commonwealth's Memorandum of Law, filed April 27, 2012, it is

hereby ORDERED and DECREED that Defendant's request to suppress evidence is

DENIED and the motion is DISMISSED.

BY THE COURT:

_____
PHYLLIS R. STREITEL          J.

RECEIVED
2012 OCT 10 PM 1:57
CLERK OF COURTS
CHESTER CO. PA.

11