COMMONWEALTH OF
PENNSYLVANIA,
Appellee,

v.

Lloyd DOYEN, Appellant.

Commonwealth of Pennsylvania,
Appellee,

v.

Gary Doyen, Appellant.

Commonwealth of Pennsylvania,
Appellee,

v.

Glenford Thompson, Appellant.

Commonwealth of Pennsylvania,
Appellee,

v.

Errol Brown, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 6, 2003.
Filed April 26, 2004.

Mark S. Greenberg, Philadelphia, for Doyen, Doyen and Brown, appellants.

Brenda L. Jones, Parkesburg, for Thompson, appellant.

Stuart B. Suss, Assistant District Attorney, for Commonwealth, appellee.

Before: DEL SOLE, P.J., KLEIN and CAVANAUGH,* JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 In these consolidated appeals, four defendants challenge their convictions of various crimes, including corrupt organizations, conspiracy, drug charges and criminal use of a communication facility.[1] Appellants challenge the suppression court's order denying the motion to suppress both wiretap evidence and physical evidence seized from the Doyen home. Appellants also claim error in compelling Gary Doyen and Glenford Thompson to proceed *pro se,* in denying a *Batson* challenge and in admitting certain testimony by Trooper Jose Torres.[2] We affirm.

¶ 2 The factual background underlying the charges is set forth in the trial court's Rule 1925 opinion:[3]

In July of 1999, Trooper Jose Torres of the Pennsylvania State Police began investigating the drug trafficking activities of someone known at that time as "Glen." Shortly thereafter, Trooper Torres identified "Glen" as defendant, Glenford Thompson. A few months later, Trooper Torres learned that Glenford Thompson received his drugs from defendant, Gary F. Doyen, who was the primary supplier of the narcotics sold by Thompson.

In February of 2000, the police obtained authorization to conduct electronic surveillance of Thomson and Doyen's cellular telephones. The defendants changed cell phones several times during the course of the investigation. Each time they did, the police obtained a new authorization to conduct electronic monitoring on the new phones. During the course of the investigation, the police intercepted thousands of telephone conversations that showed defendants' involvement with the distribution of marijuana in southeast Pennsylvania.

The police also utilized the services of confidential informants, conducted controlled buys, used visual surveillance, and employed other investigative techniques in order to ascertain the size of the organization, the amount of marijuana involved and the identity of the individuals involved in the distribution of marijuana. The police discovered that the defendants were part of a large-scale marijuana trafficking organization that was responsible for distributing hundreds of pounds of marijuana every ten days to two weeks throughout Chester, Philadelphia, Montgomery and Dauphin Counties in Pennsylvania. Defendant, Gary Doyen, was the head of the organization. Defendants, Glenford Thompson and Errol Brown, were Gary Doyen's principal assistants. By the end of the police investigation, at least twelve individuals were linked to the Doyen drug organization.

Trial Court Opinion, 5/15/03, at 1–3 (footnotes omitted).

---

* Cavanaugh, J. did not participate in the disposition of this case.

1. Lloyd Doyen was acquitted of corrupt organizations, possession with intent to deliver marijuana on April 5, 2000, and possession of drug paraphernalia on April 5, 2000.

2. Appellants have filed one consolidated brief. Where an issue applies to fewer than all Appellants, we will so indicate in our discussion.

3. Contrary to Pa.R.A.P. 2117, Appellants' Statement of the Case does not contain "a closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy...." Pa.R.A.P. 2117(a)(4).

■ ¶ 3 Appellants Gary Doyen and Glenford Thompson first argue that the suppression court erred in failing to suppress tape recordings and transcripts of intercepted telephone conversations obtained pursuant to wiretap authorization orders signed by Superior Court Judge Phyllis Beck. Appellants claim that the Commonwealth did not establish the authenticity of Judge Beck's signature on the wiretap authorization and sealing orders. Appellants, however, neglect to mention that they never challenged the signature of Judge Beck. In their Motion to Exclude and Suppress, Appellants asserted that the signatures of Judge James Cavanaugh, which appeared on other wiretap authorizations, were not authentic. Therefore, at the hearing on this motion, Judge Cavanaugh testified and authenticated his signatures. Judge Beck did not appear at the hearing for the simple reason that her signatures were never challenged. Claims not raised in the trial court may not be raised for the first time on appeal. *Commonwealth v. Gordon*, 364 Pa.Super. 521, 528 A.2d 631 (1987), *appeal denied*, 517 Pa. 621, 538 A.2d 875 (1988).

■ ¶ 4 Appellant Errol Brown also challenges Judge Beck's signatures by contending that his prior counsel was ineffective for failing to move to suppress the wiretap evidence that was obtained pursuant to authorization issued by Judge Beck. Pursuant to *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), this claim of ineffectiveness may not be raised for the first time on appeal but must await collateral review.[4]

■ ¶ 5 Appellants Lloyd Doyen and Gary Doyen argue that the suppression court erred in failing to suppress evidence seized from their home at 5448 Merion Avenue. We summarize the court's findings of fact in relation to this issue. The State Police obtained a search warrant which was executed shortly after 6:00 a.m. on April 5. They were accompanied by a Special Emergency Response Team (SERT). The lead vehicle was a SERT van with a public address system. For approximately one to two minutes before arriving at the house, a statement, "State Police, we are serving a warrant, 5448 Merion Avenue," was continuously transmitted over the public address system. This transmission was loud enough that a state trooper who was in a closed vehicle approximately 1000 feet from the residence could hear it. The announcement was repeated as the SERT team and State Trooper Greg Wert climbed the stairs to 5448 Merion Avenue. Trooper Wert knocked and Corporal White yelled, "State Police, search warrant." After a few seconds, the trooper forced entry with a ram.

■ ¶ 6 Appellants contend that the police violated the so-called "knock and announce" rule set forth in Pa.R.Crim.P. 207. This rule states:

(A) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.

(B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances

---

4. Although we may address an ineffectiveness claim on direct appeal where the claim was raised post-trial and an evidentiary hearing was held, *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), that is not the case here. As noted above, Judge Beck's signature was not challenged by any of the defendants and the suppression hearing did not address that claim.

require the officer's immediate forcible entry.

(C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Although this rule is frequently referred to as "knock and announce," the rule actually imposes no specific obligation to knock. Rather, the focus of the rule is on the announcement of identity, authority and purpose of the law enforcement officers seeking entry. The purpose of the rule "is to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against the unauthorized entry of unknown persons, and to prevent property damage resulting from forced entry." *Commonwealth v. Martinelli,* 729 A.2d 628, 630 (Pa.Super.1999). Since the more common way of executing a warrant is to knock on the door, announce one's identity and authority, and wait for the door to be opened voluntarily, the cases cited by Appellants focus on how long it is reasonable for the police to wait after knocking before entering forcibly. *See, e.g., Commonwealth v. Douventzidis,* 451 Pa.Super. 280, 679 A.2d 795 (1996).

¶ 7 In the present case, however, the officers announced their identity, authority, and purpose for one to two minutes prior to arriving at the door and continued to announce as Trooper Wert climbed the steps and knocked on the door. Finding no Pennsylvania case with a similar factual situation, the Commonwealth has directed our attention to *United States v. Spikes,* 158 F.3d 913 (6th Cir.1998). In *Spikes,* the police used a bullhorn to announce repeatedly, "Sheriff's office, search warrant, open the door." After knocking on the door for about four seconds, an officer

checked the door, found it unlocked, and entered the house. The total time from when the police first used the bullhorn until they entered the house was approximately 15 to 20 seconds. After discussing the purpose of the rule—"that a homeowner 'know who is entering, why he is entering, and ... be given a reasonable opportunity to surrender his privacy voluntarily'"—the court held that whether the officers waited a reasonable period of time before forcibly entering the residence is to be measured from when the officers first announced their identity and purpose over the bullhorn. *Id.* We find the logical and well-reasoned analysis set forth in *Spikes* persuasive as to the issue presently raised. Thus, the question here becomes whether the one to two minutes between the announcement and the forcible entry was reasonable. The suppression court, after reviewing precedent, found that it was and we cannot conclude that such a determination was error. *See, e.g., Commonwealth v. Parsons,* 391 Pa.Super. 273, 570 A.2d 1328 (1990) (45–second wait reasonable).

■ ¶ 8 Appellants Gary Doyen and Glenford Thompson contend the trial court erred in compelling them to proceed *pro se* at trial. Although an accused has a constitutional right to representation by counsel during trial, he may waive this right as long as the waiver is knowing and intelligent. *Commonwealth v. Monica,* 528 Pa. 266, 597 A.2d 600 (1991). To make a knowing and intelligent waiver, the defendant must be aware of both the right and of the risks of forfeiting the right to counsel. To satisfy this standard the trial court must inquire on the record whether or not:

(1) the defendant understands that he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent; (2) the defendant understands the nature of the

charges against him and the elements of each of those charges; (3) the defendant is aware of the permissible range of sentences and/or fines for the offenses charged; (4) the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules; (5) defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and (6) the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, the objection to these errors may be lost permanently.

*Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1335 (1995). *See also* Pa. R.Crim.P. 121. Our review of the record as a whole and particularly the notes of testimony from February 14, 2002, reveals that the trial court sufficiently inquired into all of the above areas and Appellants' waiver of counsel was knowing and voluntary.

■ ¶ 9 All four Appellants raise a *Batson*[5] challenge. During jury selection, the Commonwealth used a peremptory challenge to dismiss a juror who appeared to be of African–American–Hispanic descent. When the defense challenged this action, the Commonwealth gave the following explanation:

[The juror], by the questionnaire he filled out, is not a high school graduate. He has a GED. He is young, and I think this is a very complicated case. His education.

The other reason was that when juror number 55, I was looking at the jury panel, juror number 55 ... had identified himself as a police officer, I noticed a visible look of disdain from [the juror] . . . .

It was brought to my attention by Trooper Torres that he was giving him dirty looks.

N.T., 4/12/02, at 108–9. The trial court found the prosecutor's explanation credible and found as a fact that the juror was stricken "because of his age, education level, and an apparent dislike of police officers." Trial Court Opinion, 5/15/03, at 29.

■ ¶ 10 To sustain a challenge under *Batson*, a defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck the prospective juror on account of race. Once a *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror. The court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination. *Commonwealth v. Harris*, 572 Pa. 489, 817 A.2d 1033 (2002). Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. *Id.* The trial court's finding as to discriminatory intent, based as it is on an assessment of credibility, may be overturned only if it was clearly erroneous. *Id.* Our Supreme Court has stated that both bias against police and lack of education are race neutral reasons. *Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491 (1995). The court's decision was not clearly erroneous and this claim is without merit.

■ ¶ 11 Finally, Appellants challenge the court's decision to qualify Troop-

5. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

er Torres to testify as an expert concerning the coded and guarded language used by drug dealers.[6] Admission of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Commonwealth v. Begley,* 566 Pa. 239, 780 A.2d 605 (2001). Moreover, the standard for qualifying an expert witness is a liberal one: the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible. *Commonwealth v. Riffert,* 379 Pa.Super. 1, 549 A.2d 566 (1988). The witness's expertise may be based on practical, occupational, or other experiential training; it need not have been gained through academic training alone. *Id.* We have reviewed the record of Trooper Torres's qualifications and, like the trial court, find that it amply demonstrated a reasonable pretension to specialized knowledge of the coded and encrypted language utilized by drug traffickers. There was no abuse of discretion in allowing him to testify as an expert.

¶ 12 Accordingly, as none of Appellants' claims has merit, we affirm the judgments of sentence.

¶ 13 Judgments of sentence affirmed.

---

6. Appellants Lloyd Doyen and Gary Doyen also set forth, as a separate argument, two particular portions of Trooper Torres's testimony. However, this argument section contains no reference to any case law and it is not clear on what basis Appellants are challenging this testimony. *See Commonwealth v. Long,* 367 Pa.Super. 190, 532 A.2d 853 (1987) (this Court will not review issues that are not properly developed by citation to the record and reference to supporting case law). At trial, counsel objected on the basis that Trooper Torres was not qualified to testify as an expert. Therefore, this issue is subsumed in the issue we discuss.