J-S69018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CHARLES CABINESS | |
| Appellant | No. 428 WDA 2017 |

Appeal from the PCRA Order February 15, 2017
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016743-2009

BEFORE:  BOWES, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED JANUARY 2, 2018**

Appellant, Charles Cabiness, appeals from the order entered February 15, 2017, denying his petition for collateral relief filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

A prior panel of this Court summarized the relevant facts as follows:

In May 2009, Luzay Watson ("Watson") shot and killed Davon Young.  Two months later, Young's sister, Monnica Gay ("Nikki"), testified at Watson's preliminary hearing, following which Watson was held for trial.

After the preliminary hearing, Watson remained in the Allegheny County Jail.  He made a number of phone calls to Kevin Watson ("Kevin"), his brother, and his girlfriend, Chrissy Stubbs ("Stubbs"), from jail.  In these phone calls, the parties discussed eliminating the witnesses against Watson.  In one particular phone call, Stubbs told Watson that [Appellant] (who is also his

_____

[*] Former Justice specially assigned to the Superior Court.

brother) was "posted up", or waiting around, Nikki's sister's house.

In the late morning of August 22, 2009, [Appellant] shot Nikki in the back of the head while she was outside her sister Donneika's house, in the company of multiple neighbors and her sister's young children. Nikki's younger sister, Shanneika Gay ("Shanneika") was also present, as she had spent the night at Donneika's house. Shanneika was on the second floor of the residence when she heard a gunshot. She ran outside and saw [Appellant] running away with a gun in his hand. Shanneika, who was familiar with [Appellant] because they had lived in the same neighborhood for a time, said, "Is that Chuckie?" In response, [Appellant] turned and made eye contact with Shanneika as he continued to flee. Nikki died shortly thereafter.

On the same day as the shooting, Shanneika gave the police a detailed statement about what she observed and picked [Appellant]'s picture out of a photo array. She also identified [Appellant] as her sister's murderer at trial and testified to what she observed on the morning of August 22, 2009. The jury found [Appellant] guilty of first degree murder, [18 Pa.C.S. § 2502(a)],[1] and the trial court subsequently sentenced him to life imprisonment without the possibility of parole. [Appellant] filed a *pro se* post-sentence motion, which was denied as a matter of law.

> [1] We note for completeness that [Appellant] was tried twice. The first trial occurred in 2010 and resulted in a mistrial because the jury could not reach a unanimous verdict. The judgment of sentence at issue here is the product of his retrial in 2011.

*See Commonwealth v. Cabiness*, 105 A.3d 800 (Pa. Super. 2014) (unpublished memorandum at 1-3). Appellant timely appealed, and our Court affirmed his judgment of sentence. *Id.* The Pennsylvania Supreme Court denied his petition for allocatur. *See Commonwealth v. Cabiness*, 105 A.3d 734 (Pa. 2014).

In August 2015, Appellant *pro se* filed a timely PCRA petition. Counsel was appointed, and after some continuances, filed an amended petition. The Commonwealth filed a response in opposition to the petition. In January 2017, the PCRA court sent notice pursuant to Pa.R.Crim.P. 907 that Appellant's petition would be dismissed without a hearing. Appellant did not file a response to the notice, and thereafter, the court dismissed Appellant's petition.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Instead of issuing an opinion pursuant to Pa.R.A.P. 1925(a), the PCRA court relied upon the reasoning outlined in its Pa.R.Crim.P. 907 notice, which cites no authority and does not expand upon its holdings beyond one or two sentences for each point.

On appeal, Appellant raises the following issues for our review:

I. Did the lower court abuse its discretion in denying the petition alleging counsel's ineffectiveness without a hearing, where [Appellant] established the merits of the claim that trial counsel was ineffective for failing to challenge the competency of key Commonwealth witness Shanneika Gay?

II. Did the lower court abuse its discretion in denying the petition alleging counsel's ineffectiveness without a hearing, where [Appellant] established the merits of the claim that trial counsel was ineffective for failing to call Danielle Hawkins to rebut the Commonwealth's contention that telephone conversations between Luzay Watson, his brother, Kevin Watson, and friend, Chrissy Stubbs, at the Allegheny County Jail, involved locating and killing witnesses?

III. Did the lower court abuse its discretion in denying the petition alleging counsel's ineffectiveness without a hearing, where [Appellant] established the merits of the claim that trial

- 3 -

counsel was ineffective for failing to call Marquea Davis to testify for the defense as she did in the first trial?

IV. Did the lower court abuse its discretion in denying the petition alleging counsel's ineffectiveness without a hearing, where [Appellant] established the merits of the claim that trial counsel was ineffective for failing to adequately explain or otherwise ensure that [Appellant] knew and understood his rights, and advise him of his options, and the ramification of his choices, when the trial court denied his request for a mistrial due to a juror's apparent misconduct, and limited his choices to either removing the juror and proceeding with only [eleven] jurors, or allowing the juror who disregarded the court's instructions to remain on the panel?

Appellant's Brief at 5-6 (unnecessary capitalization and suggested answers omitted).[1]

We review an order denying a petition under the PCRA to determine whether the findings of the PCRA court are supported by the evidence of record and free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). We afford the court's findings deference unless there is no support for them in the certified record. *Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citing *Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010)).

In this case, the PCRA court dismissed Appellant's petition without a hearing. *See* PCRA Court Order, 1/12/17 (citing in support Pa.R.Crim.P.

_____

[1] Appellant also raises, as a separate issue, that his petition is cognizable under the PCRA. *See* Appellant's Brief at 17. As Appellant's petition is timely filed, the issues raised are within the purview of the PCRA, and the trial court did not find that the petition was not cognizable under the PCRA, it is unnecessary to further examine this issue.

907). There is no absolute right to an evidentiary hearing. *See Commonwealth v. Springer*, 961 A.2d 1262, 1264 (Pa. Super. 2008). On appeal, we examine the issues raised in light of the record "to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without an evidentiary hearing." *Springer*, 961 A.2d at 1264.

All of Appellant's issues involve the ineffective assistance of counsel. We presume counsel is effective. *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). To overcome this presumption and establish the ineffective assistance of counsel, a PCRA petitioner must prove, by a preponderance of the evidence: "(1) the underlying legal issue has arguable merit; (2) that counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission." *Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009) (citations omitted). "A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A claim will be denied if the petitioner fails to meet any one of these requirements. *See Springer*, 961 A.2d at 1267 (citing *Commonwealth v. Natividad*, 938 A.2d 310, 322 (Pa. 2007)); *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008).

First, Appellant claims that the PCRA court erred in denying his petition without a hearing where Appellant had established that counsel was

ineffective for his failure to challenge the competency of Shanneika Gay. *See* Appellant's Brief at 18. Appellant contends that because Ms. Gay's testimony differed between the preliminary hearing, the first trial, and the second trial, her testimony was tainted. *Id.* at 18. Appellant claims that counsel should have requested a taint hearing, because a determination of whether Ms. Gay's memory had been distorted was crucial to ensuring his fair trial. *Id.* at 20-21. He baldly avers that had the court been asked to address the issue of taint, it could only have concluded that Ms. Gay was incompetent to testify. *Id.* at 21.

Taint is "the implantation of false memories or the distortion of real memories caused by interview techniques of law enforcement, social service personnel, and other interested adults, that are so unduly suggestive and coercive as to infect the memory of the child, rendering that child incompetent to testify." *See Commonwealth v. Delbridge*, 855 A.2d 27, 35 (Pa. 2003). However, these concerns apply only to children under the age of fourteen. *See Commonwealth v. Judd*, 897 A.2d 1224, 1229 (Pa. Super. 2006) (citing *Rosche v. McCoy*, 156 A.2d 307 (Pa. 1959)). The concerns expressed in *Delbridge* "clearly become less relevant as a witness's age increases, ultimately being rendered totally irrelevant as a matter of law by age fourteen." *See Judd*, 897 A.2d at 1229. Thus, where the witness is over the age of fourteen, the issue is one of credibility and not of taint. *Id.* In *Judd*, we thus found no merit to a challenge to the denial of

a taint hearing, where the witness was over the age of fourteen at the time of trial. *Id.*

Even had Appellant identified in his pleadings and brief the manner in which Ms. Gay's testimony "changed over time" — and he did not — Ms. Gay was fourteen when she testified at trial. She was cross-examined by counsel regarding her inconsistent statements, and the jury, as fact-finder, found her credible. *See Commonwealth v. Houser*, 18 A.3d 1128, 1135-1136 (Pa. 2011) (noting that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses). Thus, the PCRA court properly determined that there were no genuine issues of fact and that this claim had no arguable merit, and we discern no abuse of its discretion. *See Springer*, 961 A.2d at 1264; *Johnson*, 966 A.2d at 533.

Second, Appellant claims that the PCRA court abused its discretion in denying his petition without a hearing, because Appellant established the merits of the claim that counsel was ineffective for failing to call a witness. *See* Appellant's Brief at 22. Appellant contends that the expert testimony of Danielle Hawkins, Appellant's girlfriend, could have been used to rebut the Commonwealth's contention that telephone conversations between Luzay Watson, Appellant, their brother Kevin Watson, and Chrissy Stubbs, involved locating and killing witnesses who had testified against him. *Id.* Appellant contends Ms. Hawkins, who testified at his first trial, could have been qualified as an expert in the interpretation of Appellant's linguistics code. *Id.*

At trial, the Commonwealth presented recordings of phone calls between Appellant, his brothers, and Luzay Watson's girlfriend, Chrissy Stubbs. Detective Vonzale Boose was admitted as an expert and testified regarding certain slang terminology used in the conversations. In one of the conversations, Luzay Watson indicated he was pleased that Appellant was "posted up," or waiting, outside of Monnica Gay's home. Trial counsel cross-examined Detective Boose regarding whether the conversations could be interpreted as Mr. Watson attempting to obtain and raise funds to pay for a lawyer.

To establish ineffective assistance of counsel for failure to call a witness, the petitioner must establish 1) the witness existed; 2) the witness was available to testify for the defense; 3) counsel knew of, or should have known of the existence of the witness; 4) the witness was willing to testify for the defense; and 5) the absence of the testimony of the witness was so prejudicial as to have denied the petitioner a fair trial. **See Commonwealth v. Sneed**, 45 A.3d 1096, 1109 (Pa. 2012). Specifically, to show prejudice, the petitioner must show how "the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." **Commonwealth v. Gibson**, 951 A.3d 1110, 1134 (Pa. 2008).

Generally, to qualify as an expert witness, "one must only possess more expertise than is within the ordinary range of training, knowledge, intelligence, or experience." **In re K.C.F.**, 928 A.2d 1046, 1050 (Pa. Super. 2007). Essentially, the witness need only have a reasonable pretension to

specialized knowledge on a subject for which expert testimony is admissible. *See Commonwealth v. Riffert*, 549 A.2d 566, 576 (Pa. Super. 1998). In narcotics investigations involving legally intercepted telephone conversations, expert testimony regarding the cryptic language used is permissible. *See Commonwealth v. Kinard*, 95 A.3d 279, 288 (Pa. Super. 2014) (*en banc*) (emphasis added) (finding that expert testimony of police officer regarding coded language used by defendant in telephone calls regarding drug transactions admissible). Specifically, this "cryptic language" refers to the coded and encrypted language utilized by drug traffickers. *See Commonwealth v. Doyen*, 848 A.2d 1007, 1014 (Pa. Super. 2004) (finding state trooper's testimony regarding drug dealers' coded language appropriate expert testimony).

Here, Ms. Hawkins was apparently ready and willing to testify, and she informed counsel of her availability and potential testimony. Appellant claims that, as a lifelong resident of the section of Pittsburgh in which the murder took place, Ms. Hawkins was qualified as an expert beyond the average resident of that area, but she was not called as a defense witness. Further analysis of the notes of testimony establishes that the expert testimony of Detective Boose was not the sole testimony leading to Appellant's conviction. Other evidence and testimony, including an eye witness to the shooting, were introduced to the jury. Accordingly, Appellant cannot show that but for the failure to introduce the testimony of Ms. Hawkins, the result of the proceeding would have been different, therefore

his claim fails. ***See Springer***, 961 A.2d at 1267; ***Johnson***, 966 A.2d at 533.

Third, Appellant contends that the court abused its discretion in denying the PCRA petition without a hearing, because trial counsel was ineffective for failing to call Marquea Davis to testify at the second trial. ***See*** Appellant's Brief at 27. At the first trial, Ms. Davis had testified that the man she saw running from the crime scene did not look like Appellant, and Appellant contends that her testimony discredited the testimony of Shanneika Gay. ***Id.*** at 28.

As noted above, the petitioner must establish that the witness existed and was available to testify for the defense, that counsel knew of the existence of the witness, that the witness was willing to testify for the defense, and that the absence of the testimony was so prejudicial as to deny the petitioner a fair trial. ***Sneed***, 45 A.3d at 1109. A petitioner must show that the testimony would have been beneficial under the circumstances of the case to establish prejudice. ***Gibson***, 951 A.3d at 1134.

Here, the PCRA court properly determined that Ms. Davis' testimony was not beneficial. Ms. Davis, who testified at the first trial, was discredited on cross-examination, including admitting that she was an acquaintance of Appellant and co-defendants; that she did not tell police who arrived on the scene about what she had viewed; that she was thirty or forty feet away from the shooter; and that she viewed the shooter running on a hillside. ***See*** Notes of Testimony (N.T.), 8/11/10, at 535-37; 543-45, 548-53.

Thus, Appellant cannot establish prejudice, where the testimony was not beneficial under the circumstances of the case. *See Sneed*, 45 A.3d at 1109; *Gibson*, 951 A.3d at 1134. Accordingly, the PCRA court did not err in dismissing Appellant's claim. *See Springer*, 961 A.2d at 1264; *Johnson*, 966 A.2d at 533.

Finally, Appellant contends that the court abused its discretion in denying Appellant's petition without a hearing, because counsel was ineffective for failing to adequately advise Appellant following the trial court's denial of his motion for a mistrial. *See* Appellant's Brief at 31-32. Appellant contends that he was not told he would be waiving both his right to be tried by a jury of twelve and his right to challenge the court's denial of his motion for a mistrial on appeal. *Id.* at 37.

This issue refers to an incident that occurred during deliberations. On October 19, 2011, a juror had been excused from service and replaced with an alternate, leaving one alternate juror remaining. *See* N.T. at 501-02. On October 20, 2011, the court read the jury its instructions, and the jury began deliberations. *Id.* at 502-03. The remaining alternate was dismissed when deliberations began. *Id.* at 502. On October 21, 2011, the court's tipstaff discovered that the jury foreperson was holding a page titled "Reasonable Doubt," which he immediately confiscated. *Id.* at 539. The court discussed the matter with counsel and agreed to conduct a *voir dire* of the jurors. *Id.* at 540.

The jury foreperson was called first. *Id.* at 540. She explained she had printed out the dictionary definition of "reasonable doubt" because jury members were having difficulty remembering instructions. *Id.* at 542-43. She had shown the document to two other jurors but did not think they had read it. *Id.* at 542, 545-46. The foreperson stated she was prepared to follow the court's instructions regarding reasonable doubt. *Id.* at 543. Appellant conferred with counsel. *Id.* at 544. Following this conference, counsel moved for a mistrial, which the court denied. *Id.* at 545-46. The court stated that it would reinstruct the jury on reasonable doubt and the Commonwealth's burden, but would *voir dire* the two jurors who had seen the printout. *Id.* at 546. The additional jurors denied reading the document and stated they had only seen the title of the printout. *Id.* at 547-51.

The court asked counsel how he wished to proceed. *Id.* at 552. Counsel requested the opportunity to speak with Appellant and stated that he would recommend the removal of the foreperson. *Id.* The court indicated counsel could talk to Appellant regarding the issue and that if he chose to keep the foreperson, the court would redefine reasonable doubt and the Commonwealth's burden for the jurors. *Id.* at 553. If Appellant chose to strike the foreperson, Appellant could proceed with eleven jurors. *Id.* at 553.

Following a discussion with Appellant, counsel stated that Appellant wished to strike the foreperson. *Id.* at 554. Counsel stated Appellant was prepared to go forward with eleven jurors and requested that the court

- 12 -

recharge on reasonable doubt. *Id.* at 554. The court colloquied Appellant on the rights he was giving up by proceeding with eleven jurors, and Appellant indicated he wished to proceed. *Id.* at 554-56. The court then dismissed the foreperson and reinstructed the jury on reasonable doubt. *Id.* at 555. Shortly thereafter, the jury returned a guilty verdict. *Id.* at 654.

According to Appellant, rather than agreeing to proceed with less than twelve jurors, counsel should have requested a mistrial a second time. *See* Appellant's Brief at 36-37. Appellant claims that the court would have been compelled to grant this motion, relying on *Commonwealth v. Stewart*, 448 A.2d 598 (Pa. Super. 1982).

In *Stewart*, the Court noted that a defendant may agree to proceed with less than twelve jurors. *See Stewart*, 448 A.2d at 599. If the defendant objects to the dismissal of a juror, then he may refuse to proceed with less than twelve jurors and require the court to declare a mistrial. *Id.* at 600. However, a mistrial is required only when a defendant is forced to proceed over an objection. *Id.* Where the defendant does not object to the numerical composition of the jury, he waives this claim for purposes of appeal. *Id.* at 600-01.

The procedure outlined in *Stewart* is inapplicable here. Upon discovering the jury foreperson's indiscretion, counsel promptly moved for a mistrial. *See* N.T. at 545-46. The court denied the motion, concluding that the foreperson's actions did not prejudice Appellant. *Id.* Nevertheless, the court offered Appellant a lesser remedy, i.e. the dismissal of the foreperson

and reinstruction of the remaining eleven jurors on reasonable doubt. *Id.* at 552-53. Following consultations with counsel and an oral colloquy with the court, Appellant knowingly agreed to proceed with eleven jurors. *Id.* at 55-56. To be clear, had Appellant rejected the court's offer to dismiss the foreperson, deliberations would have proceeded accordingly, and no new grounds for a mistrial existed. Thus, Counsel could not compel a mistrial.[2] Thus, there is no merit to this claim. *See Springer*, 961 A.2d at 1264; *Johnson*, 966 A.2d at 533.

Accordingly, we discern no error in the PCRA court's decision to dismiss Appellant's petition without an evidentiary hearing. Appellant's claims are without merit, and he is entitled to no relief. *See Ragan*, 923 A.2d at 1170.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/2/2018

---

[2] Appellant was free to challenge the court's denial of his mistrial motion on direct appeal.