J-A30041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAMIR RICHARDSON | : | |
| | : | |
| Appellant | : | No. 2818 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007318-2022

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JANUARY 30, 2026**

Damir Richardson ("Richardson") appeals from his convictions of first-degree murder and possessing an instrument of crime ("PIC"). Richardson challenges the admission of other crimes evidence to prove identity, the sufficiency of the evidence, the admission of expert testimony, and the trial court's allegedly inaccurate statement of the facts. Because we determine the trial court properly admitted other crimes evidence, sufficient evidence established Richardson's guilt, the trial court did not abuse its discretion by admitting expert testimony, and the trial court did not misstate the facts, we affirm.

On January 14, 2022, shortly before 9:00 p.m., Philadelphia police were called to the scene of a shooting on the 6500 block of Ross Street; they were then directed to Chestnut Hill Hospital to investigate the report a woman had been shot. Outside the hospital, the police found a car with bullet holes in its

rear passenger window and door. Inside the hospital, they found the car's four passengers, three of whom were unhurt and one of whom, Carissa Bright ("the victim"), was being treated for wounds that later proved fatal. **See** N.T., 7/30/24, at 37-41, 206; 7/31/25, at 37-39.[1]

At Ross Street, the police found two fired cartridge cases ("FCC"); they also recovered surveillance footage showing that a distinctive, silver-colored minivan[2] followed the victim's car, stopped when it stopped, resumed pursuit when the victim's car began to drive, caught up to the car, and then fired multiple shots at the victim's car. **See id**. at 61-68, 79-81, 183-93; N.T., 7/31/24, at 36-37.

A few hours later, at 4:00 a.m., police in Clementon, New Jersey, were summoned to Richardson's ex-girlfriend's house on Oriole Place, ten to fifteen miles from Philadelphia. Richardson had previously threatened violence against her. A brick had been thrown through the window of a car she sometimes drove; several bullets had been fired into the house. Police recovered five FCCs, security video, and a note reading in part, "I . . . to . . . you and your whole family gone [sic] DIE!!! Bitch Ass N[] Dont [sic] get caught lacking [sic] its [sic] up for you." **See** Commonwealth's Exhibit 21.

---

[1] The Medical Examiner testified the victim suffered a gunshot wound to the right side of her head, slightly behind her ear, and that bullet also passed through her thymus, torso, and lung. **See** N.T, 7/21/24, at 36-37.

[2] The minivan, a 2003 Honda Odyssey, was missing a panel on the passenger side sliding door where it had distinctive damage and tire rims and its center brake light was inoperable. **See** N.T., 7/31/24, at 44-45.

The video recovered at the ex-girlfriend's house showed the same van used in the Ross Street shooting, with the license plate LNW0059, turning onto Oriole Place shortly before the shooting and leaving within five minutes. Officer Raymond Andrejeczak, an expert in firearms identification and ballistic evidence, testified the FCCS found in New Jersey were fired from the same gun used in the Ross Street shooting. *See* N.T., 7/30/25, at 83, 99-103, 120-23, 128, 194-95; N.T., 7/31/25, at 10-29, 48-50.[3]

Police contacted Daniel Vlado, the previous owner of the minivan used in the shootings. Vlado told the police he sold the car, with license plate LNW0059, to Richardson on January 8, 2022 (six days before the Ross Street shooting). Vlado identified Richardson at trial and told the police Richardson used phone number (215)512-8895 in an Apple Pay transaction. *See* N.T., 7/30/24, at 125, 135-45.

Police confirmed the telephone number (215)512-8895 belonged to Richardson and determined the phone was in the vicinity of Ross Street minutes before the victim was shot. Cellular phone records further established that at 3:42 a.m., minutes before the shooting at Richardson's ex-girlfriend's house, Richardson's phone was in the area of that shooting, and at 4:19 a.m.

_____

[3] In July 2024, the Commonwealth filed a motion *in limine* to introduce evidence of the New Jersey shooting to establish identity and as *res gestae*. *See* Commonwealth's Motion *in Limine*, 7/9/24. Richardson alleges a hearing was held on the motion but not transcribed. *See* Richardson's Brief at 7. The record contains the court's order granting the motion.

in the area of Gloucester, New Jersey, consistent with leaving the New Jersey crime scene. License plate readers confirmed that evidence. *See* N.T., 7/30/24, 107-10, 135-36, 139, 142, 205, 211-20.

Two days later, the police recovered the minivan without its license plate at Abington train station. They recovered DNA throughout the inside the minivan, which Jamilla Howard, an expert in forensic science and DNA analysis, matched Richardson's. Police also found an FCC below the windshield wipers that matched the FCCs found at both shooting scenes. That day, Instagram messages were sent from Richardson's account, "Havenax,"[4] to another account; the messages stated the writer "ran from 12,"[5] "had to run from the cops, [c]an't really talk about why," was "hot[] ASL RN," and was "trying to lay low for a while." Ten days later, Havenax sent another message stating, "[I] got to pay y'all back from using your four bullets[.]" Other evidence showed Richardson knew the police had found the minivan. Police in Glendale, California arrested Richardson in June 2022. *See id*. at 83, 88, 90, 146-60, 201-31; N.T., 7/31/24, at 53-56.

At trial, the Commonwealth qualified Detective Thorsten Lucke ("Detective Lucke"), as an expert in video recovery compilation and analysis,

_____

[4] Richardson's ex-girlfriend testified she followed Richardson on Instagram and his Instagram name was "Havenax." N.T., 7/30/24, at 127.

[5] "12" is a reference to the police. *See* N.T., 7/30/24, at 227.

historical call detail record analysis, and digital evidence in social media. Detective Lucke testified about the location of Richardson's cell phone and minivan at the time of the crimes and about Richardson's Instagram messages. *See* N.T., 7/30/24, 167-70, 221-31. The parties stipulated that Richardson was not licensed to carry a firearm at the time of the shooting. *See* N.T., 7/31/24, at 81.

Richardson testified someone carjacked him with his phone inside his minivan prior to January 14, 2024. He stated he chose not to report the crime. He further testified he found the minivan, with its engine running and his phone inside, on the street, and drove it to the Abington train station. *See* N.T., 7/31/24, 95-109. The parties stipulated Richardson's family would testify to his good character. *See id*. at 112-13.

A jury convicted Richardson of the above-listed offenses. Following the denial of his post-sentence motions, Richardson timely appealed and he and the trial court complied with Pa.R.Crim.P. 1925.

On appeal, Richardson raises five issues for this Court's review:

1. Did the [trial court] err in admitting evidence of the incident in New Jersey for purposes of identification?

2. Was the verdict of murder and possession of an instrument of crime based on insufficient evidence?

3. Should the conviction be overturned because it was not supported by the doctrine of transferred intent?

4. Did [the trial court] err in qualifying Detective Thorsten Lucke as an expert[?]

5. Was the [trial court's] inaccurate statement of the facts as to the ballistics evidence prejudicial requiring the remand of this case for submission of a corrected opinion?

Richardson's Brief at 3-4.

Richardson's first issue concerns the trial court's grant of the Commonwealth's motion *in limine* to admit evidence of the New Jersey shooting to prove the identity of the Ross Street shooter.

This Court reviews a trial court's rulings on motions *in limine* using the abuse of discretion standard that governs evidentiary rulings. ***See Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa. Super. 2013) (also noting the admission of evidence is committed to the sound discretion of the trial court). This Court will only reverse the trial court's evidentiary ruling when the appellant sustains his heavy burden to prove the trial court abused its discretion. ***See id***. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. ***See Commonwealth v. Cook***, 231 A.3d 913, 919 (Pa. Super. 2020). An abuse of discretion is not simply an error of judgment, but is an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality. ***See Commonwealth v. Talley***, 265 A.3d 485, 530 (Pa. 2021).

Pennsylvania Rule of Evidence 404 precludes the admission of prior bad acts evidence offered to prove propensity. ***See*** Pa.R.E. 404(b)(1). Prior bad acts evidence may, however, be admissible to prove a relevant fact, including, *inter alia*, identity. ***See*** Pa.R.E. 404(b)(2); ***Commonwealth v. Saez***, 225

- 6 -

A.3d 169, 178 (Pa. Super. 2019). Other crimes evidence is admissible to prove identity where the details of the crimes are so highly correlated that proof a person commits one of them makes it very unlikely another person committed the other. *See Commonwealth v. Ross*, 57 A.3d 85, 102 (Pa. Super. 2012) (*en banc*); *Commonwealth v. Weakley*, 972 A.2d 1182, 1189 (Pa. Super. 2009) (also stating "the other crime need not match every fact and circumstance of the charged crime before it may be used to prove identity").

Richardson asserts evidence is not admissible to prove identity unless it establishes a virtual signature; he identifies five factors used to make this assessment: (1) the manner the crimes were committed, (2) the weapons used, (3) the ostensible purpose the crime, (4) location, and (5) type of victims. *See* Richardson's Brief at 17-18, citing *Weakley*. Assessing these factors, Richardson asserts the ballistic expert could not state the bullet fragments from both shootings matched, his ex-girlfriend was not in the car on Ross Street, and the Ross Street victim had no link to the residents of the New Jersey house. *See* Richardson's Brief at 18-19.

The trial court, which instructed the jury that the New Jersey evidence was admissible to show the identity of the shooting for the Ross Street "incident," *see* N.T., 7/31/24, at 161-62, found the New Jersey shooting shared the following similarities, *inter alia*, with the Ross Street shooting and was admissible to prove identity: (1) the same gun was used in both

- 7 -

shootings, (2) Richarson's phone was near the scene of both shootings at the time they occurred, the second of which was at the home of his ex-girlfriend, (3) Richardson had spoken oddly to his ex-girlfriend shortly before the New Jersey shooting, (4) Richardson owned the minivan used in both shootings, (5) Richardson's fingerprints and DNA were found inside of the minivan, and (6) the shootings were committed within eight hours and twenty-six miles of each other. *See* Trial Court Opinion, 1/21/25, at 12-14.

As an initial matter, it is unclear Richardson preserved an objection to the trial court's *in limine* ruling. Richardson did not file a written objection to the motion *in limine* and did not order the notes of testimony of the *in limine* hearing or include them in the certified record, limiting our review. Additionally, Richardson did not object when the challenged evidence was admitted into evidence or to the court's jury charge concerning that evidence; Richardson asserted only that the New Jersey video did not show what type of vehicle was involved in the shooting and that it did not look like the same van used in the Ross Street shooting. *See* N.T., 7/29/24, at 158-64. Given Richardson's limited objection concerning the minivan, he arguably waived his challenge to the admission of the evidence. However, because the Commonwealth did not assert waiver, we address the merits of Richardson's claim.

The evidence shows the same, uniquely-damaged 2003 Odyssey minivan, which Richardson bought days before the Ross Street shooting, was

used in both shootings, the police found Richardson's DNA in the minivan, Richardson's cell phone was present at the scene of both shootings, the FCCs found at both scenes were fired from the same gun, the first shooting occurred in Richardson's neighborhood and the second, hours later, at the home of his ex-girlfriend, Richardson sent incriminating Instagram messages, and Richardson fled to California after the second shooting. These facts considered by the trial court for identity purposes under Rule 404(b) were appropriate, and the trial court did not abuse its discretion in admitting the evidence for that purpose. *See Ross*, 57 A.3d at 102; *Weakley*, 972 A.2d 1189.

In his next two, related claims, Richardson asserts the evidence was insufficient to prove guilt and did not demonstrate transferred intent.[6]

In reviewing a sufficiency claim, this Court has acknowledged,

we may not weigh the evidence and substitute our judgment for the fact-[]finder . . .. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Burton*, 234 A.3d 824, 829 (Pa. Super. 2020) (citation omitted). *See Commonwealth v. Fitzpatrick*, 181 A.3d 368, 374 (Pa.

---

[6] The trial court found Richardson's sufficiency claim waived due to lack of specificity in his 1925 Statement. *See* Trial Court Opinion, 1/21/25, at 11. It nevertheless addressed the merits of the claim.

Super. 2018) (stating all evidence is considered in conducting sufficiency review). The Commonwealth may prove the intent to kill through circumstantial evidence alone. *See Commonwealth v. Johnson*, 160 A.3d 127, 136 (Pa. 2017).

A defendant commits murder of the first degree when a human being is unlawfully killed, the defendant is responsible for the killing, and he acted with malice and the specific intent to kill. *See Commonwealth v. Haney*, 131 A.3d 24, 33 (Pa. 2015). The specific intent to kill may be inferred from the use of a deadly weapon to inflict injury on a vital part of the body. *See Commonwealth v. Talbert*, 129 A.3d 536, 543 (Pa. Super. 2015). Transferred intent has no legal significance where the evidence establishes the specific intent to kill the person who is killed. *See Commonwealth v. Jackson*, 955 A.2d 441, 449-50 (Pa. Super. 2008).

Richardson asserts the evidence was wholly circumstantial and assigns dispositive significance to the fact none of the three people in the victim's car testified at trial; he also asserts there is no proof the minivan was in his possession from the time he bought it until the shooting and someone could have stolen it. *See* Richardson's Brief at 23. After summarizing the law, Richardson concludes the Commonwealth failed to prove his specific intent to kill the victim. *See id*. at 26. Regarding transferred intent, Richardson argues the Commonwealth failed to prove the victim was the intended victim of the

shooting, and a different passenger could have been his actual intended victim. *See id*. at 26-27.

The trial court found sufficient evidence of Richardson's intent to kill from evidence he lay in wait, pursued the victim's car, and fired four bullets into the car, including the fatal shot that hit the victim in the head. *See* Trial Court Opinion, 1/21/25, at 17-21. It further determined Richardson did not raise a transferred intent theory below and, regardless, transferred intent was irrelevant to his specific intent to kill because he shot four bullets in the vehicle and the victim, a passenger therein, was struck in the head with one of the bullets. *See id*.

Employing the proper standard of review and assessing all of the evidence in the light most favorable to the Commonwealth as the verdict winner, we affirm the trial court's conclusion the evidence was sufficient to establish Richardson's specific intent to kill where he pursued the victim's car and shot her in the head, a vital part of the body. *See Haney*, 131 A.3d at 33; *Talbert*, 129 A.3d at 543. Under these facts, transferred intent has no relevance to Richardson's intent. *See Jackson*, 955 A.2d at 449-450.

Richardson's next issue concerns the trial court's qualification of Detective Lucke as an expert. *See* Richardson's Brief at 29-35.

The admission of evidence is within the discretion of the trial court, and we review its evidentiary rulings for an abuse of discretion. *See Commonwealth v. Walters*, 323 A.3d 151, 157 (Pa. 2024).

As we have stated,

> the standard for qualifying an expert witness is a liberal one: the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible. The witness's expertise may be based on practical, occupational, or other experiential training; ***it need not have been gained through academic training alone***.

***Commonwealth v. Doyen***, 848 A.2d 1007, 1014 (Pa. Super. 2004) (internal citation omitted; emphasis added). Expert testimony is generally admissible if the witness has specialized knowledge that is beyond that possessed by the average layperson, that knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, and the expert's methodology is generally accepted in the relevant field. ***See Walters***, 323 A.3d at 157, citing Pa.R.E. 702.

Richardson asserts Detective Lucke did not establish his professional education or higher degrees and his expertise is "a mile wide and an inch deep." ***See*** Ricardson's Brief at 29-30. He further asserts Detective Lucke testified from a biased viewpoint because he has never testified for the defense. ***See id***. at 30. Richardson discusses Pa.R.E. 702, 703, and 705, and states the evidence from the cell phone and cell towers that the Commonwealth presented:

> was never established as reliable and accurate to a degree of scientific certainty. [Detective Lucke] never established who was driving the automobile or using the cell phone numbers. The automobile could have been stolen. The cell phones could have been borrowed. The testimony as to the identity of the automobile or the cell phones could have been wrong. Detective Lucke's

testimony was conjecture and speculation . . . [and] amounted to "junk science."

Richardson's Brief at 32-33.

The trial court found Richardson waived this claim by failing to state in his Rule 1925(b) statement which of Detective Lucke's multiple areas of expertise the Commonwealth allegedly failed to prove. **See** Trial Court Opinion, 1/21/25, at 21 n. 29. The trial court alternatively rejected the merits of Richardson's claim. It noted Detective Lucke had training in video recovery and analysis at Quantico, Virginia,[7] in 2012, had processed over 3,000 crime scenes, teaches that subject to federal, state, and local law enforcement, and has testified as an expert in that area hundreds of times. **See id**. at 21. The trial court also cited Detective Lucke's testimony that he had training, including an FBI course, in historical call record analysis, teaches classes for and with the FBI on the subject, and has testified as an expert in this field more than 50 times. **See id**. Finally, the trial court noted Detective Lucke's testimony regarding his extensive experience with digital evidence and media analysis, which overlapped with his other areas of expertise. **See id**. at 21-22. The trial court concluded expertise involved in video analysis involves assembling various sources of video and "putting them together to show the chain of events of a criminal incident using his specialized tools, training, and

_____

[7] We note Quantico is the home of the FBI's national training facility.

knowledge. *See id*. at 22-23. For those reasons, it rejected Richardson's claim.

Richardson's claim merits no relief. His focus on Detective Lucke's lack of formal degrees ignores the detective's training and relevant practical experience. *See Doyen*, 848 A.2d at 1014. Additionally, Richardson's unsupported speculation that the minivan could have been stolen is irrelevant to Detective's Lucke's qualification as an expert.

Richardson's final issue concerns the trial court's alleged misstatement of the record. *See* Richardson's Brief at 35-37. Specifically, Richardson faults the trial court's statement, "[t]he Commonwealth presented evidence that all the [recovered FCCs] from both shootings were fired from the same firearm. Further, all the recovered bullet fragments and cartridge cases were all consistent with each other." Richardson's Brief at 35, quoting Trial Court Opinion, 1/21/25, at 6. Richardson claims Officer Andrejczak's testimony that without a firearm he cannot compare a fired *bullet* to an FCC contradicts the court's summary. *See* Richardson's Brief at 35, citing N.T., 7/31/24, at 26. Richardson asserts "the misstatement about the ballistics could confuse or unduly influence [this Court's] analysis of this appeal" and compels correction. *See* Richardson's Brief at 36-37.

In fact, Officer Andrejczak testified all of the *FCCs* were fired from the same firearm based on his examination of a bullet jacket from the Philadelphia shooting and one from the New Jersey shooting; he did not make that

statement about the bullets.  *See* N.T., 7/31/24, at 22-24.  Accordingly, the trial court did not misstate the record.  Thus, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/30/2026